In re Sidney L. BORN, Debtor.

HOYT, INC., Plaintiff,

v.

Sidney L. BORN, Defendant.

G. C. R. E. A., LTD., NO. 12, Plaintiff,

v.

Sidney L. BORN, Defendant.

Albert E. KUEHNERT, Plaintiff,

v.

Sidney L. BORN, Defendant.

Bankruptcy No. 80–00147–HP.
Adv. Nos. 81–0021–HP, 81–0022–HP and 81–0023–HP.

United States Bankruptcy Court,
S. D. Texas,
Houston Division.

Feb. 20, 1981.

Richie & Greenberg, P. C., Houston, Tex., for plaintiffs.

Morris, Campbell & Seikel, Houston, Tex., for defendant.

Memorandum Opinion on Motion to Order Separate Trials of Issues

EDWARD H. PATTON, Jr., Bankruptcy Judge.

On the 13th day of February, 1980, Sidney Born filed a voluntary petition seeking reorganization under Chapter 11 of the United States Bankruptcy Code. On the 13th day of January, 1981 these three adversary proceedings were filed by secured creditors, each of whom seeks to annul or modify the automatic stay of § 362 of the Bankruptcy Code so as to allow the plaintiff to exercise rights of foreclosure. On the 27th day of January, 1981 the defendant filed identical responses to each of these complaints. Each of these responsive pleadings contain identical counterclaims. The plaintiffs have now moved the court to order separate trial of the counterclaims from the trial of the complaints seeking to modify the stay. The defendant opposes these motions.

There is thus posed what the court perceives to be an important and fundamental issue under the Bankruptcy Reform Act of 1978. It is appropriate to first review the basic concepts of the automatic stay of 11 U.S.C. § 362, the concept of adequate protection as set forth in 11 U.S.C. § 361 and the procedural as well as substantive problems that arise in connection with the application of these concepts.

Section 362 provides generally that upon the filing of a petition for relief an automatic stay goes into effect to stay any acts of secured creditors to exercise their contractual rights against the debtor or the

debtor's property. Subsections (d) and (e) of § 362 provide that a creditor who is thus stayed may seek a termination or modification of the stay. It is clear that Congress intended a creditor so stayed be entitled to a prompt determination of the question of whether the stay should be modified or annulled. Subsection (e) provides that within 30 days of the date the creditor requests relief the court must conduct a preliminary hearing. If the stay survives the preliminary hearing a final hearing on the annulment or modification of the stay must be commenced within 30 days after such preliminary hearing. Rule 4001 of the Suggested Interim Bankruptcy Rules, which has been adopted by this court as a local rule, provides that the stay expires within 30 days after the final hearing is commenced unless the court determines that the stay be continued. Bankruptcy Rule 701 provides that a proceeding to obtain relief from a stay is an adversary proceeding.

█ Thus, when a creditor initiates an adversary proceeding as here seeking to modify the stay and the defendant debtor requests a hearing the court must conduct a preliminary hearing within 30 days. If the stay is continued as a result of the preliminary hearing a final hearing must be commenced within the next 30 days and determined within the following 30 day period. If there is no counterclaim involved the issues on both the preliminary hearing and the final hearing are the same and, as was done here, the preliminary hearing and final hearing may be consolidated. If it is established that the defendant debtor has no equity in the property and if the property is not necessary to an effective reorganization, the court must dissolve the stay. However, even if those conditions are not met the court may continue the stay if the creditor is given "adequate protection." 11 U.S.C. § 362(d). Adequate protection as used in § 361 means that there must be assurance given by the debtor to the secured creditor that the latter's interest in the collateral will not be lost even though such creditor is denied the right, for the present, to take possession of the collateral.

In the ordinary case the issues involved in a trial under § 362 are (1) does the plaintiff creditor have a valid lien? (2) What is the amount of the indebtedness against the collateral? (3) What is the value of the collateral? (4) Is the property necessary to an effective reorganization? (5) Is the creditor adequately protected? However, when the debtor files a counterclaim the issues to be determined may become much more complex if the counterclaim must be tried simultaneously. In each of the three cases now before the court the defendant debtor seeks by its counterclaim to resolve extremely complex factual and legal issues.

In answer to the plaintiffs' complaints to modify the stay the defendant has filed identical answers and counterclaims in 19 page pleadings. Summarized briefly it is alleged by the defendant debtor that over a period of about 18 months the three plaintiffs, acting together and in conspiracy, induced the defendant to purchase several tracts of land for a consideration of about $4,000,000. Some of the consideration was cash, but it also involved the transfer of two Rolls Royce cars, another expensive car, a motor home, an interest in mineral property, notes and assumptions of obligations. It is further alleged that the plaintiffs were engaged in a conspiracy covering ten years, that there were thirty-two specific acts of misrepresentation and nine specific instances of failure to disclose material facts to the debtor. The counterclaims further allege common law fraud resulting in actual damages of over $2,000,000 and punitive damages of $2,000,000 plus attorneys fees. It is also alleged that there was statutory fraud based on violations of the Texas Business Code which brought about damages of $38,000,000. It is alleged that there are violations of the Texas Deceptive Practice and Consumer Protection Act resulting in damages of $115,000,000. It is further alleged that there is a cause of action based on breach of fiduciary duties arising from seven specific breaches and for such breaches there are sought actual damages of over $2,000,000 and over $2,000,000 in punitive damages because of lost profits and lost

partnership opportunities. The counterclaims also allege violations of Texas and Federal Security Laws and seek return of consideration, damages, attorneys fees and punitive damages. The counterclaims further allege a cause of action based on violation of the Federal Racketeering and Corrupt Organization Statute as well as mail fraud, with a prayer for damages for such conduct in the amount of $38,400,000. The final prayer is for actual damages of $38,400,000 and punitive damages of $115,575,000.

Relying on the same factual allegations defendant pleads by way of affirmative defenses that the plaintiffs are not entitled to modification of the stay because the defendant was induced to execute loan and transfer documents by virtue of economic coercion, that because of the misrepresentations and fraud plaintiffs are estopped from asserting lien rights to the property, that the conduct of plaintiffs was so unconscionable as to render the documents unenforceable, and that the plaintiffs have no rights to the collateral because of their fraudulent conduct.

The court must at this point assume that the affirmative defenses and counterclaims are asserted in good faith, and that they have some merit to them. As pointed out by the defendant in his response to the motion of plaintiffs to order separate trials, Judge Schultz of this district in a related adversary proceeding, *Born v. Kuehnert*, et al., Adversary No. 80–0702–HS, ruled that there was a bona fide dispute raised by the very allegations here asserted by the debtor. It is obvious that because of the magnitude of the issues raised by the affirmative defenses and counterclaims it would be impossible to conduct an efficient and orderly trial of these issues within the time provided by law for the trial or modification of stay issues. Although the plaintiffs have agreed that the commencement of the final hearings could be extended about a week past the statutory deadline, these few days are of no real consequence in these particular cases.

It would seem clear beyond dispute that a trial of the complex matters raised by the defendant in his affirmance defenses and counterclaims would involve a multitude of issues that are not directly involved with the question of modification of the stay. Based on the present pleadings it would be a reasonable assumption that the trial would take at least two to three weeks, even after adequate discovery and pre-trial procedures to define the issues. It would be almost a denial of due process and totally disruptive of the court's docket to wade into a trial of this complexity without stringent pre-trial procedures to develop facts and define the issues. The affirmative defenses asserted invoke the same facts for their resolution as do the counterclaims which seek affirmative relief. The only realistic solution is to try the allegations of the complaint that directly involve the modification of the stay totally apart from the affirmative defenses and counterclaims.

This does not contravene the concept of adequate protection. The secured creditor has a contractual right in the property which is constitutionally protected until the defendant debtor meets his burden of establishing to the contrary. See discussion in Collier on Bankruptcy, 15th Edition, Vol. 2, ¶ 361.01, pp. 361–2 et seq. The concept of adequate protection is to assure the secured creditor that his constitutional rights in the property are not dissipated while the reorganization proceedings run their course. Part of the reorganization process in this case is the debtor being able to establish his causes of action against the plaintiffs who he claims have defrauded him. These causes of action should not be summarily dealt with in this case because of their obvious complexity. In a separate but related evidentiary hearing involving the same parties and most of the same issues Bankruptcy Judge Schultz of this court has determined that the allegations set forth in the counterclaims raise bona fide factual and legal issues. The court will take judicial notice of this ruling. Since it is clear that the debtors' claims are not subject to summary disposition, it does no violence to the concept of the Bankruptcy Code to require the

debtor to furnish adequate protection until those complex issues raised by him are finally laid to rest. On the contrary such an approach furthers the statutory schemes of § 361 and § 362 of the Code by protecting the rights of the secured creditor while complex reorganization issues are concluded.

The debtor can of course argue that the court should listen to his evidence as to fraud, deceit and coercion and take those factors into consideration in deciding whether to continue the stay, even if the court declines to act on the merits of the counterclaim. The court does not agree. The answer to that position is found in § 361 dealing with adequate protection. It is there provided that adequate protection may be furnished by requiring the debtor to make periodic cash payments to the extent that the stay decreases the value of the creditor's interest in the property or by providing a replacement lien or by granting such other relief as will result in the creditor realizing the "indubitable equivalent" of the creditor's interest in the property. Congress, obviously aware of the constitutional problem of the property right of a secured creditor being impaired, has provided that such property interest must be protected until such time as the creditor is allowed the right to realize on his collateral. It cannot be seriously contended that giving a secured creditor an obligation to defend the counterclaim asserted by the debtor is the indubitable equivalent of his interest in the property. Until the merits of the counterclaim, (which in this case includes the merits of the affirmative defenses) are finally determined those unproved allegations simply are not adequate protection within the meaning of § 361. Stated another way, even if it is assumed that the defendant debtor's affirmative defenses and counterclaims are valid and will be eventually sustained, the secured creditor is entitled to either a substitute lien, periodic payments or other indubitable equivalent until a final nonappealable judgment has been rendered which will avoid or diminish the prebankruptcy contract. That final determination in these cases should not be made as part of the § 362b hearing because of their complexity and it therefore must follow that there is no point in allowing the defendant debtor to put on evidence at the § 362 hearing dealing with those affirmative defenses or counterclaims.

Further, since the affirmative defenses in these cases are substantially the same as the counterclaims both factually and legally, not only would the trial be unduly extended, but it would be necessary for the court to decide those issues on the merits. This might well foreclose a proper trial on the merits of the counterclaims by application of the doctrines of res judicata, estoppel by judgment or law of the case.

Should the debtor not establish on the § 362 trial that he is entitled to continuation of the stay because he is unable to offer adequate protection, all is not lost. If he is serious in his allegations and wishes to pursue his counterclaims he will still have a bona fide cause of action at least for damages. He may well be able to prevent the plaintiffs from disposing of the property through ordinary lis pendens notices. If his claim for triple and punitive damages are sustained, he will be justly compensated.

Although no official statistics are available at this time the court has reviewed the docket of the Bankruptcy Court for the Southern District of Texas and finds that a substantial load placed upon the court arises from hearings on complaints to modify the automatic stay. Judicial notice is taken of the court's own docket. In order to cope with the problem of disposing of these matters within the time required by law the bankruptcy court in this district has assigned one of its three judges to preside at all times over what has been designated as the "miscellaneous docket" so as to have one judge free from other trials and duties to give such matters the preferential treatment which is required. In December, 1980 in the Houston Division of the Southern District of Texas there were twenty-five complaints filed seeking to modify the automatic stay. In January, 1981 there were thirty-eight such complaints filed. Each

complaint must be set for at least a preliminary hearing and many of them for a second and final hearing. It is easy to see that it is necessary for the court to dispose of more than one relief from stay matter every working day. It follows that it would be totally unrealistic and probably physically impossible for the court to function if, as part of the process of trying such matters, it has to take on as part of such trials affirmative defenses and counterclaims which in fact constitute major litigation.

Thus, if an extended trial results from the necessity of hearing complex counterclaims or affirmative defenses, the entire docket of the court is disrupted. If complex litigation such as here presented is forced to a final trial within 30 or 60 days of the date the initial pleading is filed there is virtually no opportunity for adequate pretrial procedures which would result in the issues being defined and discovery undertaken and completed. As a result a trial under such rushed conditions may well be unduly extended with the parties in effect undertaking discovery from witnesses as they are placed on the witness stand and all parties and the court grope for what may well be undefined and undelineated areas of inquiry.

■ It must be conceded, of course, that the defendants counterclaim, if successful, may well result in a reduction or elimination of the amount of debt owed to the plaintiff creditor which in turn will effect the vital issue of whether there is or is not equity in the collateral. However, it is the opinion of the court that this is not determinative. Under the concept of adequate protection the secured creditor's interest in the property cannot be damaged because of the automatic stay. For the purposes of adequate protection the rights of the parties are fixed as of the time of the filing of the petition for relief. The very heart of the concept of adequate protection is to assure the secured creditor that as the bankruptcy procedures unfold he will not be faced with a decrease in the value of his collateral. The problem thus presented rises to the level of a constitutional issue—that is whether the stay of the creditor's ability to exercise his contractual rights deprives him of a property right without due process of law. Congress has addressed this issue by devising the adequate protection scheme of § 361. Only if the secured creditor is adequately protected can the debtor continue to use or dissipate the collateral. The thrust of adequate protection is to hold the status quo until a debtor can structure a plan of reorganization, or, in cases under Chapter 7, until the trustee can liquidate the estate. Either of these procedures, that is liquidation or reorganization, may take many months and involve many disputed issues and trials including the recovery of preferences, objections to claims, selling property, borrowing money and numerous other activities. While all of this is taking place the secured creditor must stand by and await developments. If he is not adequately protected during this time he must be given the right to seek recovery of his collateral in accordance with the prebankruptcy contract existing between the parties. By requiring complaints to modify the stay to be commenced within 60 days of the time of their institution it is clear that Congress envisioned the concept of adequate protection as a means of promptly giving secured creditors an assurance that the position they occupied at the time of the filing of the petition for relief does not deteriorate during the course of the proceedings. It therefore follows that until the rights of the secured party can be finally and absolutely fixed during the course of the proceedings he is entitled to adequate protection of his interest as it existed at the time of filing.

■ Therefore, when the defendant debtor through complex and bona fide affirmative defenses or counterclaims seeks affirmative counter relief it is not proper to attempt to determine that issue in the adequate protection hearing and thereby determine finally the amount of the debt which in turn will determine the extent of the creditor's interest which he is entitled to have protected. Rather, the counterclaims

or affirmative defenses may be severed out and the modification of stay tried on the assumption that the creditor will prevail on the counterclaim. To do otherwise would deprive the secured creditor of the right of adequate protection while the proceedings are pending. Part of the proceeding that is pending are the defendant debtor's counterclaims which assert causes of action against the secured creditors. The entire concept of adequate protection is to protect the rights of the secured creditor as they existed at the time of the petition initiating the main bankruptcy proceeding. Section 361 gives protection to the extent that the stay, use, sale or lease adversely affects the creditor's interest in the property. The cause of action which the defendant debtor may have as represented by its counterclaim is an asset of the debtor which will remain viable even if the creditor forecloses on the property. If the counterclaim is not severed and the debtor prevails in the trial court the stay will not be lifted and the debtor will continue to have the use of the property. The creditor in such a situation has little recourse. If he appeals, he is faced with a year or more of time, increased legal fees, perhaps total erosion of the collateral and perhaps more important, as an appellant he has no right to a supersedeas bond that will prevent the debtor from continuing to use and perhaps waste the collateral. Thus, even though the creditor may be successful on appeal, he will have perhaps won a hollow victory. Although he would then hold his original debt untainted by the counterclaim allegations, he may well be left only with an unsecured claim. The adequate protection which Congress intended him to have has been lost because of what ultimately proved to be an unwarranted counterclaim by the defendant debtor.

Of course, it is necessary to balance this potential for harm to the creditor against the potential for harm that arises to the debtor if he is not allowed to assert as part of the adequate protection issues the merits of his counterclaim. If the counterclaim is tried and the creditor convinces the trial court that the debt is not vulnerable to the counterclaim and the debtor is unable to give adequate protection, the court's order would be to lift the stay. The debtor however would have the right to stay this foreclosure during appeal. In such a case the debtor can post a supersedeas bond or other security and the status quo would be maintained pending a final decision on the appeal. In the case of real property he may be able to file a lis pendens notice. The debtor, if a proper bond and stay is entered, would have the use of the property pending appeal and if reversed the creditor can be made whole by the appeal bond or other security. Thus, if the counterclaim is tried on the merits and if the trial court erroneously rules in favor of the debtor on the counterclaim the creditor is without protection pending appeal, but if the trial court rules erroneously in favor of the creditor on the counterclaim the debtor has a means of protection. Therefore, trying the counterclaim can result in disaster for the creditor but not the debtor.

It seems clear that the congressional intent was that complex counterclaims should be severed from complaints seeking to modify the stay under § 362. In House Report No. 95–595, 95th Cong., 1st Sess. (1977) 344, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6300 the following is found:

> "At the expedited hearing under subsection (3) [of 362], and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. These counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather they will be the subject matter of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim."

Bankruptcy Rule 742 provides that Rule 42 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 42(b) provides that the court in fur-

**50**

therance of convenience or when separate trials will be conducive to expedition and economy may order a separate trial of any counterclaim or any separate issue. The right to order separate trial of counterclaims and issues lies within the discretion of the court. *Big Cola Corporation v. World Bottling Co.*, 134 F.2d 718, 723 (6th Cir. 1943); *Hall Laboratories v. National Aluminate Corp.*, 95 F.Supp. 323, 326 (D.Del.1951); *Seagram-Distillers Corp. v. Manes*, 25 F.Supp. 233, 234 (W.D.S.C.1939); *Container Co. v. Carpenter Container Corp.*, 9 F.R.D. 89, 91 (D.Del.1949). The court may invoke Rule 42 on its own initiative. *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores*, 339 F.2d 673, 675 (3rd Cir. 1964), cert. denied 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965).

Taking all these matters into consideration it is the conclusion of the court that the complex counterclaims and affirmative defenses of the defendants in these proceedings must be severed from the complaints to modify the stay and that the trials of the modification of the stay complaints must proceed without regard to either the counterclaims or the affirmative defenses regarding coercion, estoppel, unconscionability and fraud. These affirmative defenses, under the facts of this case, involve the same complex involved facts as do the counterclaims and accordingly the trial and determination of these issues must be postponed for more orderly disposition.

It must be made clear that the court is not holding that a counterclaim or affirmative defenses should never be tried and determined during the trial of a complaint to modify the stay. Rather it is the holding of the court that under the facts here presented the court, in the exercise of the discretion granted under Federal Rule 42, will order separate trials of the bona fide issues raised by the counterclaims and affirmative defenses because of their obvious complexity, the lack of legal prejudice to the rights of the defendant, and in the interest of orderly administration of justice.

An order in conformity with this opinion is being entered this date.