**In re Steven Harold COTE, Cecilia Theresa Cote, Debtors.**

**UNITED FINANCE COMPANY, an Oregon corporation, Plaintiff,**

v.

**Steven Harold COTE Cecilia Theresa Cote, and Robert W. Myers, trustee, Defendants.**

**Bankruptcy No. 382–03063. Adv. No. 83–0041.**

United States Bankruptcy Court, D. Oregon.

Feb. 22, 1983.

Gary M. Georgeff, Portland, Or., for plaintiff.

Dennis A. Boardman, Portland, Or., for defendant debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

### FIRST TRUST DEED

On February 16, 1981 the debtors executed a promissory note and a trust deed granting the plaintiff a security interest in two pieces of property. One of these pieces is referred to by the parties as the Yamhill County property and is the residence of the debtors. The other is referred to as the East Creston property. Subsequent to the execution of the trust deed and prior to the filing of this chapter 13 case the debtors conveyed the East Creston property to one Roy Mullen. Although not named as a defendant in the adversary proceeding, Mullen appeared in pro per at the trial.

At the time of the sale of the East Creston property the debtors and Mullen expected that the plaintiff would grant a release of its lien upon the East Creston property upon receipt of $20,000. The debtors and Mullen agreed that the debtors would pay this sum to the plaintiff in order to obtain such a release. As evidence of this obligation the debtors gave to Mullen a promissory note for $20,000. The plaintiff denies that it had ever offered to release the East Creston property for this sum. The law of Oregon is such that if the plaintiff forecloses only upon the Yamhill County property or the East Creston property it will have waived its security interest in the other property. If the plaintiff forecloses against both properties and the East Creston property is sold, Mullen will have an unsecured debt against the chapter 13 estate of $20,000.

At the hearing on confirmation, which was held one week after the trial of this adversary proceeding, the debtors and their attorney, the attorney for the plaintiff herein, a representative of Canadian Imperial Bank (CIB) and Roy Mullen were present. CIB stated that it did not wish to pay off the plaintiff and Willamette Savings & Loan, the holder of a lien superior to that of the plaintiff, but would prefer that the debtors be provided an opportunity to

sell the Yamhill County property in order to satisfy, or at least partially satisfy, the encumbrances superior to its security interest. The debtors requested additional time to file an amended plan which would provide them a period of time within which to sell the Yamhill County property and possibly offer additional security to the plaintiff in order to satisfy the encumbrance held by the plaintiff and the encumbrances superior to the plaintiff in order to protect the property sold to Mullen and thereby avoid an unsecured claim of $20,000 on the part of Mullen.

In order of priority the Yamhill County property is encumbered by delinquent taxes of $4,743.00, a security interest of Willamette Savings and Loan with a balance of $76,241.63, the security interest of the plaintiff with a balance of $92,541.95 consisting of principal and interest of $89,792.18, foreclosure costs already incurred of $2,449.77, and costs of appraisal of $300.00. These debts total $173,526.58. In addition there is a third security interest held by Canadian Imperial Bank (CIB) with a balance of $29,191.11 which is inferior to the security interest of the plaintiff. Adding the amount owing to CIB brings the total debt encumbering Yamhill County property to $202,717.69. The East Creston property, which was sold to Mullen, is free of encumbrances other than the trust deed held by the plaintiff.

At the trial the evidence of the values of the Yamhill County property and the East Creston property was conflicting. The plaintiff's expert witness fixed the value of the former at $170,000 and the latter at $40,000. The debtor, Steven Cote, testified that the value of the Yamhill County property is $225,000. Mullin testified that the value of the East Creston property is between $35,000 and $40,000.

If the plaintiff were permitted to foreclose and the two properties were sold at the figures asserted by the plaintiff of $170,000 and $40,000 it is expected that the net sums received after payment of a fee to a real estate broker would be $159,800 and $37,600 respectively or a total of $197,400.

This sum would exceed the balance owing to the plaintiff and the encumbrances superior to the plaintiff by $23,873.42. This net balance is less than the amount due CIB.

11 U.S.C. § 362(d) provides:

"On request of a party in interest and after notice and a hearing the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

"(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

"(2) with respect to a stay of an act against property, if—

"(A) the debtor does not have an equity in such property; and

"(B) such property is not necessary to an effective reorganization."

The plaintiff relies upon the provision of both subsection (1) and subsection (2) of section 362(d).

■ The court finds that the plaintiff is not entitled to relief under subsection (1). The plaintiff has adequate protection by reason of the value cushion between net amounts which would be recovered in a foreclosure against the Yamhill County property and the East Creston property of $197,400 (using the plaintiff's figures for the value of these properties) and the amounts owing the plaintiff and upon the senior encumbrances of $173,526.58 and the debtors' proposal to sell the Yamhill County property. In any later confirmation hearing the court will place terms and other limitations upon the sale of the Yamhill County property which will permit the plaintiff to proceed with foreclosure if the value cushion is reduced to the point that there would be a risk to the plaintiff.

■ Regarding subsection (2) of section 362(d) the question is presented as to what is meant by the term "equity" used in subsection (A). The cases are divided as to whether "equity" refers to the interest of the debtor after all encumbrances are subtracted from the value of the property or whether it refers to the amounts owing to

the plaintiff and upon liens superior to the lien of the plaintiff. The first view is expressed in the case of *La Jolla Mortgage Fund v. Rancho El Cajon Assoc.,* 18 B.R. 283 (Bkrtcy.S.D.Cal.1982). The latter view is expressed in the cases of *Matter of Certified Mortgage,* 25 B.R. 662 (Bkrtcy.M.D.Fla. 1982); *Matter of Spring Garden Foliage,* 15 B.R. 140 (Bkrtcy.M.D.Fla.1981); *In re Wolford Enterprises,* 11 B.R. 571 (Bkrtcy.S.D. W.Va.1981). The better view is that "equity" is determined by subtracting from the value of the property the amounts owing to the plaintiff and upon liens superior to the lien of the plaintiff without considering amounts owing upon liens inferior to the lien of the plaintiff.

There may be many instances when the holder of a lien inferior to the lien of a plaintiff does not want relief from the stay afforded to the plaintiff. In a foreclosure a junior lienholder is faced with the possibility that unless it purchases the interests of those holders of superior liens it will lose any recovery upon its lien. The junior lienholder may prefer to negotiate with the debtor for different payment terms or a reduction in the amount due to it. It appears incongruous for a plaintiff who is oversecured to assume the position of a junior lienholder and argue lack of equity in order to obtain relief from the automatic stay when such relief is not desired by the junior lienholder and when such relief would not be in the best interest of the junior lienholder.

The problem of the junior lienholder is recognized in the *La Jolla* case. In footnote 7 the court states:

"Of course, this Court always stands ready to hear from the holders of junior secured claims on whether such stay should remain in force. In an appropriate case, the urging of such claim holders may make a difference in the final outcome, as they are entitled to have their interests considered in the equitable balance that this court is charged to strike. * * *"

If "equity" is to be determined by considering those liens inferior to the lien of the plaintiff, and if the court has a duty to consider the interests of junior lienors, it is not appropriate that the plaintiff be heard to say what may or may not be in the best interest of junior lienholders. If foreclosure would be in the best interest of a junior lienholder, the junior lienholder could request relief from the stay. If there has been no such request and no appearance by the junior lienholder the court should presume that relief from the stay would not be in the best interest of the junior lienholder.

In the case now before this court CIB, which holds a lien inferior to the plaintiff, has not requested relief from the stay and did not appear at the trial. It would therefor be improper to consider the lien held by CIB in determining whether there is "equity" in the Yamhill County and East Creston property. Since there is equity in these two properties if the junior lien of CIB is not considered, relief from the stay must be denied as to these properties.

## SECOND TRUST DEED

On April 22, 1981 plaintiff was given a promissory note secured by a trust deed on property referred to by the parties as the Sherwood property. There is presently owing $30,160.22 in principal and interest, costs of $2,148 incurred in foreclosure proceedings prior to the filing of this chapter 13 case, delinquent taxes of $1,500 and costs of an appraisal of $400 totalling $34,208.22.

The expert witness for the plaintiff testified that the value of the property is $35,-000 and that costs of sale of the property would be $3,500 which would result in a net recovery to the plaintiff after foreclosure of $31,500. These figures would result in a negative equity of $2,700. Interest accrues on the debt at $14.30 per day and taxes at $750 per year. The debtor, Steven Cote, testified that in his opinion the Sherwood property has a value of $85,000.

Both plaintiff's expert and the debtors agree that the highest and best use of this undeveloped property would be as a site for multiple dwelling units. At some earlier time the debtors had received an offer from a public housing authority to purchase the

property for $80,000. The reasons why a sale did not result from the offer are not clear. Steven Cote states that he refused the offer because the housing authority wanted 6 months in which to make payment. The plaintiff's expert testified that the housing authority backed out of the sale because it was concerned with what it perceived to be a drainage problem. The plaintiff's expert testified that there was little market at this time for real property for the construction of multiple unit dwellings, that private financiers are not making loans upon such properties, that the only developers who have any interest are public housing authorities and that public funds for such projects are not now available. The plaintiff's expert arrived at his opinion of value by comparing it with another piece of property recently purchased for development as multiple unit dwellings.

The court finds that the testimony of the plaintiff's expert as to the value has more credibility than that of the debtor and finds that the fair market value of the Sherwood property is $35,000. There is no equity in the Sherwood property above the amount owing to the plaintiff and senior encumbrances. The property is not necessary to an effective reorganization. There is no value cushion and the amount owing is increasing as time goes by. The debtors have not offered additional collateral or any other form of adequate protection. Relief from the stay as to the Sherwood property will therefore be granted

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 752.