In re James Michael **FAIRES** and Carolyn Ann Faires, a/k/a Carolyn Hanson, Debtors.

**WALTER E. HELLER WESTERN, INCORPORATED, Petitioner,**

v.

**James Michael FAIRES and Carolyn Ann Faires, a/k/a Carolyn Hanson, Respondents.**

Bankruptcy No. 83–01467. Adv. No. A83–0651.

United States Bankruptcy Court, W.D. Washington, at Seattle.

Nov. 8, 1983.

Roger W. Jones, Jr., Brian L. Budsberg, Sax & MacIver, Seattle, Wash., for petitioner.

Jerome Shulkin, Christopher C. Meleney, Shulkin, Hutton & Bucknell, Inc., P.S., Seattle, Wash., for respondents.

## MEMORANDUM ON PETITIONER'S MOTION FOR RELIEF FROM STAY

KENNETH S. TREADWELL, Bankruptcy Judge.

The Court has before it for determination the question of whether it should grant relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code ("the Code") to permit mortgagee Walter E. Heller Western, Inc. ("Heller") to foreclose its liens against three parcels of real property belonging to the debtors' estate. In particular, the Court is called upon to decide whether "equity" in Section 362(d)(2)(A) refers to the difference between the value of the property and only the lien which is the subject of relief or the difference between the value of the property and all encumbrances against it.

### I. BACKGROUND

Trial was conducted on this matter on August 23, 1983. From the testimony adduced at trial, the Court found that the fair market value of the first parcel, the debtors' residence is $550,000. The Court also found that the fair market value of the second parcel, a vacant lot owned by debtors, is $285,000. With respect to the third parcel, beachfront property owned by debtors, the Court heard testimony of Heller's expert that the property has a fair market value of $140,000, and heard testimony by debtor Carolyn Faires that the property has a value of $225,000. Thus, the property subject to Heller's liens has a value of between $975,000 and $1,060,000. The Court has held that in determining the total fair market value of the property, a reduction of ten percent of the total value must be made to reflect the likely costs of sale, leaving a net value of between $877,500 and $954,000.

Each of the three properties is subject to encumbrances senior to that of Heller. First liens on the subject properties (estab-

lished by affidavit) total $176,214.44. Heller asserts claims of $529,768.17 secured by liens in the subject properties. At trial, a Heller Assistant Vice-President testified that the properties are also subject to liens in favor of Seattle-First National Bank securing a debt of approximately $278,197.34. The combined value of these debts is approximately $984,179.95. In the absence of proof that the Seattle-First lien is superior to that of Heller, and in view of the testimony that Heller holds a title insurance policy showing Seattle-First as holding an interest junior to Heller, the Court will assume for purposes of relief from stay that the lien of Seattle-First is junior to Heller.

## II.  LACK OF EQUITY

■  Section 362(d) of the Code provides:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
  (A) the debtor does not have an equity in such property; and
  (B) such property is not necessary to an effective reorganization.

The first question presented is whether the debtors have any equity in the subject properties. On this the burden of proof resides in the party requesting relief. 11 U.S.C. § 362(g). *See In re Bialac,* 15 B.R. 901, 903 (9th Cir.Bkrtcy.App.1981).

If the term "equity" as employed in Section 362(d)(2)(A) means the difference between the value of the property and all the encumbrances against it, the debtors have no equity in the three parcels at issue. As previously indicated, the subject properties have a net maximum value of $954,000, securing total debts of approximately $984,-179.95. However, if the term "equity" in the statute means the difference between the value of the property and the lien which

is the subject of relief, along with any liens senior thereto, the debtors do have an equity. Excluding the junior Seattle-First lien debt, the debtors have a minimum equity in the subject properties of approximately $171,517.39.

There is nothing in the legislative history to § 362 to assist the Court in its interpretation of the word "equity" and courts have differed over the proper definition. The predominate view is that the term "equity" refers to the difference between the value of the property and all encumbrances against it. *See, e.g., In re Trina-Dee, Inc.,* 26 B.R. 152 (Bkrtcy.E.D.Pa.1983); *In re Koopmans,* 22 B.R. 395 (Bkrtcy.D.Utah 1982); *In re Crescent Beach Inn, Inc.,* 22 B.R. 161 (Bkrtcy.D.Maine 1982); *In re La Jolla Mortgage Fund,* 18 B.R. 283 (Bkrtcy.S. D.Cal.1982); *In re Saint Peter's School,* 16 B.R. 404 (Bkrtcy.S.D.N.Y.1982); *First Connecticut Small Business Investment Company v. Ruark,* 7 B.R. 46 (Bkrtcy.D.Conn. 1980); *In re Dallasta,* 7 B.R. 883 (Bkrtcy.E. D.Pa.1980); Note, "Automatic Stay under the 1978 Bankruptcy Code: An Equitable Roadblock to Secured Creditor Relief," 17 San Diego L.Rev. 1113, 1123 (1980).

This view appears to be grounded in part on the policy determination that a Chapter 11 reorganization, as here, should not prefer junior lienors over senior lienors, or even over the debtors' interests. *See, e.g., In re La Jolla Mortgage Fund, supra,* at 290. It follows from this reasoning that where there is no value available to be realized to contribute to the reorganization process, the debtor should not be able to protect property unless it can show that it is essential to reorganization. *Id.*

A minority of courts have taken the opposite view. *See, In re Cote,* 27 B.R. 510 (Bkrtcy.D.Or.1983); *In re Palmer River Realty, Inc.,* 26 B.R. 138 (Bkrtcy.D.R.I.1983); *In re Certified Mortgage Corp.,* 25 B.R. 662 (Bkrtcy.M.D.Fla.1982); *In re Spring Garden Foliage, Inc.,* 15 B.R. 140 (Bkrtcy.M.D.Fla. 1981); *In re Wolford Enterprises, Inc.,* 11 B.R. 571 (Bkrtcy.S.D.W.Va.1981). Perhaps the best rationale for the minority's view is

articulated in *In re Cote, supra,* at 513, where the Court notes:

There may be many instances when the holder of a lien inferior to the lien of a plaintiff does not want relief from the stay afforded to the plaintiff. In a foreclosure a junior lienholder is faced with the possibility that unless it purchases the interests of those holders of superior liens it will lose any recovery upon its lien. The junior lienholder may prefer to negotiate with the debtor for different payment terms or a reduction in the amount due to it.

While the term "equity" in § 362(d)(2)(A) is not free from ambiguity as to its application to the facts at bar, the Court is convinced that the better view is that "equity" means the difference between the value of the property and all encumbrances against it.

First, it is significant to the Court in seeking the proper definition of the term "equity" that it has been defined by a well known source as:

The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens. The amount or value of a property above the *total* liens or charges. (Emphasis added).

*Black's Law Dictionary* 484 (5th ed. 1979). In the absence of contrary language in the statute or legislative history suggesting an interpretation other than in accord with this definition, the Court believes that Congress likely intended the word equity to have this general meaning.

Second, the Court believes that where there is no value in the property to be realized for the estate in reorganization, and where the junior lienholder has not appeared, it would be inequitable for the Court to prefer the junior lienholder's presumed interest over the senior lienholder's interest in relief from stay. If the junior lienholder desires to protect its interest, it may bid in at the foreclosure sale just as if the bankruptcy had not intervened. It presumes too much, the Court believes, to conclude that if there has been no request for relief by a junior lienholder, relief from stay is not in its best interest. *Cf., In re Cote, supra,* at 513. A junior lienholder may be perfectly content to have a senior lienholder obtain relief to commence foreclosure proceedings. Moreover, where equity is lacking to cushion the junior lienholder's security, the junior lienholder may not be sufficiently confident of recovering its attorneys' fees so as to warrant active involvement in obtaining relief from stay.

The Court therefore concludes that Heller is entitled to relief under Code § 362(d)(2)(A).

## III. NECESSARY TO AN EFFECTIVE REORGANIZATION

In addition to absence of equity, there must be a showing that the subject property is not necessary to an effective reorganization before the stay may be lifted.

The July 15, 1983 affidavit of debtor Carolyn Ann Faires in opposition to the motion for relief from stay states that the affiant was "making every effort to sell the properties" for the benefit of creditors. Ms. Hanson testified to the same effect at trial. Thus it is certainly not immediately apparent that the subject properties are "necessary to an effective reorganization."

However, as noted by the debtors, the term "reorganization" as used in § 362(d)(2)(B) has been held by at least one court to encompass both the concept of rehabilitation and liquidation, even where the debtor has no equity in the property. *See, In re Koopmans,* 22 B.R. 395, 396–408 (Bkrtcy.D.Utah 1982). But *see contra:* P. Murphy, *Creditors' Rights in Bankruptcy,* § 6.15 at 6–23–6–24 (1980); *In re Antilles Yachting, Inc.,* 4 B.R. 470 (Bkrtcy.D.V.I. 1980); *In re Terra Mar Associates,* 3 B.R. 462 (Bkrtcy.D.Conn.1980); *In re Kors, Inc.,* 11 B.R. 324 (Bkrtcy.D.Vt.1981). In *Koopmans, supra,* the court rejected a "rehabilitation" test in applying § 362(d)(2)(B) for the following:

"[P]roperty in which the debtor has no equity is necessary to an effective reorga-

nization whenever it is necessary, either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation." 22 B.R. at 407. But even if the Court were to apply this liberal test here, the Court would still be compelled to grant relief under § 362(d)(2)(B).

■ The burden of proof in showing that the property is necessary to an effective reorganization is in the debtors. 11 U.S.C. § 362(g)(2). The debtors have not convinced the Court that the subject property is in any way necessary to the operation of the debtors' business.[1] Nor have they filed a disclosure statement or a plan of reorganization so as to indicate to the Court and parties in interest their plan for liquidation of the subject properties and the necessity for liquidation by them.

Moreover, it bears noting that in November 1982, Heller commenced non-judicial foreclosure against the subject properties pursuant to state law. It appears that a foreclosure sale scheduled for April 15, 1983 was temporarily restrained by order of King County Superior Court on April 14, 1983, which order was lifted on May 12, 1983. The debtors filed their petition later that day. The legislative history to § 362(d)(2) states that the subsection "is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure." 124 Cong. Rec. H 11092-3 (Sept. 28, 1978); S 17409 (October 6, 1978).

Accordingly, the Court concludes that Heller is entitled to relief under Code § 362(d)(2)(B).

## IV. ADEQUATE PROTECTION

■ The debtors urge the Court to conclude that because the grounds for relief under § 362(d)(1) and § 362(d)(2) are stated in the alternative, a creditor who establishes a basis for relief from the automatic stay under subsection (d)(2) is not automatically entitled to relief if the debtor is able to show that notwithstanding such proof, the creditor is nevertheless adequately protected under subsection (d)(1). See In re Saint Peter's School, supra, at 408. The Court cannot agree with this conclusion.

The Court does not believe that a creditor, having successfully met its burden under § 362(d)(2)(A), as here, and having successfully met the debtor's challenge under § 362(d)(2)(B), may still be foreclosed from relief by § 362(d)(1). The disjunctive "or" which separates subsections (d)(1) and (d)(2) cannot reasonably be interpreted as having conjunctive meaning. As Heller notes, the latter interpretation would make the overriding criterion for granting relief from stay whether the petitioning creditor was adequately protected. The statute does not appear to give this weight to subsection (d)(1). Accord: In re Trina-Dee, Inc., supra, at 154; In re Gardner, 14 B.R. 455, 456 (Bkrtcy.E.D.Pa.1981); First Connecticut Small Business Investment Company v. Ruark, supra, at 49.

■ In any event, the Court has not found that Heller is adequately protected. Real estate taxes, interest and attorneys' fees have continued to mount since the filing of debtors' petition. The debtors' sources of income to make periodic payments to Heller and other lienholders appear to be seasonal and uncertain. The debtors have had several months in which to locate buyers for the subject properties but have been unsuccessful so far. Finally, there has been a steadily increasing encroachment of the amount of Heller's lien toward the net value of the subject properties (there appears to be less than a 20% equity cushion for Heller even without considering subordinate liens). For these reasons, the Court cannot find adequate protection to be present.

## V. CONCLUSION

■ Based on all the foregoing, relief from stay is warranted under 11 U.S.C. § 362(d)(2) as the debtors have no equity in

---

1. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice that debtors' sched-

ules list debtors' occupations as self employed fisherman and director of a fashion college.

the subject properties and such properties are not necessary to an effective reorganization.

Heller is hereby directed to submit findings and conclusions in accordance with this opinion.