**In re PLAYA DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 1–86–00266.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Nov. 18, 1986.

Martinec, Hargadon & Wise, Austin, Tex., for debtor.

McGinnis, Lochridge & Kilgore, Austin, Tex., for movant.

## MEMORANDUM OPINION

LARRY E. KELLY, Bankruptcy Judge.

Movant Capitol City Savings Association filed a Motion for Relief from the Automatic Stay which came on to be heard by the Court on October 10, 1986, with additional testimony being heard on October 16, 1986.

## I.

## FACTUAL BACKGROUND

1.01 Playa Development Corporation, hereinafter "Debtor" filed this Chapter 11 petition on March 31, 1986.

1.02 The Debtor owns the following real properties:

(a) a restaurant recently opened for business which is located on the West bank of Lake Austin known as "Louie's on the Lake";

(b) a yacht club building and marina complex also located on Lake Austin which is currently being operated by the Debtor; and

(c) a collection of single-family and townhome lots, common area lots, and also lots for the development of condominium units, all located in the St. Tropez Planned Unit Development, hereafter "St. Tropez P.U.D.", a development comprised of approximately 21 acres located in proximity to the West Bank of Lake Austin, Austin, Texas.

1.03 The property referred to as St. Tropez P.U.D. was originally platted as Harbor Village Subdivision and was acquired by the Debtor from Harbor Village, Ltd.

1.04 The parties to this proceeding are Playa Development Corporation, the Debtor; Capitol City Savings Association, hereafter "Movant"; Capitol City Services Corporation, a wholly owned subsidiary of Movant, hereafter "Service Corporation"; and St. Tropez Joint Venture, a partnership in which the Service Corporation and the Debtor are the only partners. This Joint Venture is title holder to a portion of the real property within the St. Tropez P.U.D. upon which construction of 21 condominium units is progressing.

1.05 St. Tropez P.U.D. was originally developed and intended to be an integrated real estate development comprised of laid out streets, full access to utilities, small single-family lots, lots for the development of multi-family condominium units, and was to be developed as a relatively expensive project. The development contains extensive common areas with amenities accessible to all residents. The entire project is currently in various stages of development, the streets are paved, the project itself is partially enclosed by an attractive wall or fence with controlled access through two entrances, a mail kiosk and guard house have been completed, some other development of the common areas has been accomplished and the 21 condominium units are substantially completed and awaiting certificates of occupancy. Complicating this picture is the fact that the 21 acres of real estate has divided ownership. Approximately 11 lots, which were originally separately platted, but are now included within common lots 87(c) and 87(d) of the St. Tropez P.U.D., by virtue of a subsequent subdivision plat filed by the Debtor, have constructed upon them the substantially completed 21 condominium units. These condominium units and lots are owned by the St. Tropez Joint Venture. All of the other real estate within the St. Tropez P.U.D. is owned by the Debtor but not all of it is involved in Movant's request for relief from the automatic stay. Of this remaining real estate there are approximately 38 total single-family and townhome lots. Thirty-one are encumbered by deed of trust liens securing purchase money indebtedness owed by the Debtor to the Debtor's predecessor in title, Harbor Village, Ltd.

1.06 The remaining seven single family lots and all of the common area lots in the St. Tropez P.U.D. are subject to deed of trust liens in favor of the Movant and is the property which is the subject of this Motion for Relief from Stay.

1.07 It should also be noted that Movant had also advanced, by means of several loans, approximately 8.9 million dollars to the St. Tropez Joint Venture, secured by deed of trust liens on the condominium units under construction. On or about the 21st day of March 1986, the Service Corporation commenced proceedings to dissolve the Joint Venture in which the Debtor is the only other partner. On or about the 7th day of October 1986 an involuntary partnership petition was filed against St. Tropez Joint Venture by the Debtor in Bankruptcy Case No. 1–86–01068 in the United States Bankruptcy Court for the Western District of Texas, Austin Division. An adversary proceeding has been instituted in that case to dispute the proposed dissolution and to reinstate the Debtor as the managing partner of the Joint Venture.

1.08 The property in question in this Motion for Relief is encumbered by two deed of trust liens in favor of the Movant, one securing an original land acquisition loan which the Debtor originally obtained from Republic Bank, Austin, in or about November 1984 and one securing a loan which the Debtor obtained at the same time from the Movant in order to obtain a letter of credit from the Movant which was placed with Republic Bank, Austin, as additional security for the original land acquisition loan. This letter of credit was called pre-petition and has been paid in full by Movant.

1.09 Movant purchased the land loan from Republic Bank, Austin on January 31, 1986, prior to the filing of the Debtor's Chapter 11 petition and received an assignment of its first lien deed of trust on the property in question. As of the March 31,

1986, the date upon which Debtor filed this voluntary Chapter 11 petition, there was due and owing on the land loan the unpaid principal sum of $3,183,000 together with accrued and unpaid interest in the approximate amount of $101,680.59. The underlying indebtedness matured by its own terms in February, 1986 but was not paid by the Debtor. The deed of trust lien securing the land acquisition loan does not encumber the condominium lots owned by the St. Tropez Joint Venture, but it does encumber all of the property in question composed of the common area lots and the seven single-family lots in the St. Tropez P.U.D. This collateral is sometimes referred to by the parties in this case as the "Republic Collateral."

1.10 As of March 31, 1986, when the Debtor filed its Chapter 11 voluntary petition, there was also due and owing on the letter of credit note an unpaid principal balance of $550,000 together with accrued non-paid interest in the approximate amount of $25,601.35. The deed of trust securing this note encumbers the property in question as well as the condominium lots owned by the St. Tropez Joint Venture.

1.11 Extensive evidence was introduced by the Movant through appraisal testimony and its appraiser was cross-examined at length by both the Debtor and Counsel for the Official Unsecured Creditors Committee. The Movant represented the Republic Collateral to have a present fair market value of only $1,401,000. The Debtor and the Official Unsecured Creditors Committee both stipulated that the property had "little or no equity," but strongly urged the Court to find that there was some equity. This Court is convinced, based upon the overwhelming preponderance of credible testimony that the value of the property exceeds $1,401,000 but does not exceed $3,000,000. For this reason the Debtor has no equity in the property in question.

1.12 The lots upon which the condominium units are constructed is owned by St. Tropez Joint Venture and as a separate partnership entity such property does not constitute "property of this estate" under 11 U.S.C. § 541, although the Debtor's partnership interest in the joint venture would constitute property of this estate. For this reason the Court did not consider issues relating to this property.

1.13 The Debtor also put on evidence that it had filed a lawsuit against Movant in State Court for damages, partially based on claims that Movant was to have been a partner in the St. Tropez P.U.D. with the Debtor, that Movant failed to honor pre-petition commitments to fund the development, and that the Service Corporation was the alter ego of Movant.

## II.

### ISSUES PRESENTED

2.01 Movant filed for relief under the disjunctive provisions of 11 U.S.C. § 362(d)(1) claiming it was entitled to relief for cause, including lack of adequate protection in the subject properties; or, that it was entitled to relief under 11 U.S.C. § 362(d)(2) claiming that the Debtor had no equity in the property and that it was not necessary for an effective reorganization.

2.02 The Debtor and the Official Unsecured Creditors Committee argued that their legal claims against the Movant should be considered by the Court in its discretion to refuse relief and that granting relief would amount to a violation of the absolute priority rule; and

2.03 Debtors further argued that Movant did not produce any direct or impeachment evidence that would suggest Movant has any better proposal for disposing of the subject property upon foreclosure and therefore to allow foreclosure would increase the deficiency to which Debtor would be exposed and would therefore impede the Debtor's reorganization efforts.

## III.

### DISCUSSION

3.01 The Motion to Modify Automatic Stay filed by Movant sought relief for cause under § 362(d)(1) and under § 362(d)(2). Because Movant presented a

strong showing that there was no equity in the property and because the Debtor and the Official Unsecured Creditors Committee stipulated that there was, at best, a small amount of equity, this Court will start its analysis with § 362(d)(2).

3.02 Upon the filing of a petition for bankruptcy, the automatic stay arises by operation of law. This stay is found at § 362(a) which provides, in general terms, "... for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise, which affect or interfere with property of the estate, property of the Debtor, or a property in custody of the estate." 2 Collier on Bankruptcy, ¶ 362.01 at 362–6 (15th Ed.1982).

3.03 The stay therefore prevents a Debtor's creditors from seeking to enforce any lien on the property of the estate and affords the Debtor a breathing spell. *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 286 (Bankr.S.D. Cal.1982).

3.04 There are two statutory grounds for lifting a stay, § 362(d)(1) and (2). As previously indicated, this Court is starting its analysis by looking at § 362(d)(2). The test under § 362(d)(2) is conjunctive; thus the stay cannot be lifted pursuant to this section unless both conditions of the subsection are satisfied. *In re Shriver*, 33 B.R. 176, 186 (Bankr.N.D.Oh.1983). The Court must first find that there is no equity in the property in question and next, determine that the property is not necessary for an effective reorganization. *In re Greiman*, 45 B.R. 574, 579 (Bankr.N.D. Iowa 1984).

■ 3.05 In considering a motion for relief from the stay, it is necessary to observe that the moving party has the burden of establishing the validity and perfection of its security interest, the amount of the debt and other costs and expenses allowed by the security interest and must carry the ultimate burden of proof with respect to equity pursuant to § 362(g). *In re Irving A. Horns Farms, Inc.*, 42 B.R. 832 (Bankr. D.Iowa 1984).

■ 3.06 In this case, the Court finds from its detailed review of the evidence presented that the great weight of the credible testimony clearly demonstrated that the subject property was worth not more than $3 million, Movant clearly demonstrated that its secured debt exceeded $3 million and that its deed of trust liens were properly perfected against the subject property. Therefore, the Movant has met its burden of proof imposed under § 362(g).

3.07 The burden of proof on all other issues is on the Debtor opposing the relief. *In re Dublin Properties*, 12 B.R. 77 (Bankr.E.D.Pa.1981). Hence, in resisting relief from the automatic stay, the Debtor in this case must prove that the property is "necessary for an effective reorganization" as required by § 362(d)(2)(B). *In re St. Peter's School*, 16 B.R. 404, 408 (Bankr.S. D.N.Y.1982).

3.08 This Court takes note that there are two divergent lines of cases interpreting the meaning of "necessary to an effective reorganization." The minority position is often referred to as the "Necessity Test" and is detailed in the well written opinion of Judge Ralph Mabey in *Empire Enterprises, Inc. v. Leo W. Koopmans (In Re Koopmans)*, 22 B.R. 395 (Bankr.D.Utah 1982).

3.09 The *Koopmans* opinion explored in detail the language and legislative history of § 362(d)(2)(B) and concluded that the language of this subsection was different from a standard that would require a showing that rehabilitation of the Debtor was feasible. *See In re Koopmans*, supra, at 397–398. It specifically noted, and correctly so, that "effective" modifies the word "reorganization"; "... which embraces rehabilitation and liquidation"; and that property may be necessary either to an "effective" rehabilitation or to an "effective liquidation." *Id.* at 398; also citing 5 Collier on Bankruptcy, ¶ 1122.03(2)(d)(i) at 112–15, (15th Ed.1982). This decision further stated that

"... [I]ndeed, now that reorganization may mean liquidation, necessity cannot be tied to rehabilitation alone. In light

of this distinction, and the new scope for reorganization, it is improbable that the necessity language creates a rehabilitation in subpart (2)(B)." *Id.* at 398.

3.10 This decision concluded its thorough analysis with articulation of criteria for the "Necessity Test." This test was stated as follows:

"... property in which the Debtor has no equity is necessary to an effective reorganization whenever it is necessary, either in the operation of the business or in a plan, to further the interest of the estate through rehabilitation or liquidation."

3.11 This "Necessity Test" in large measure will turn on the specific facts of each case. *Id.* at 407. Under this test the property, even without equity, could be found useful in the liquidation of other properties; or when sold in a package with other assets it might be found to bring a better price; or it could well be sold for the direct benefit of junior lienors and the indirect benefit of the unsecured creditors. The *Koopmans* decision has recently been followed by the United States District Court in Utah. *In re Sunstone Ridge Associates,* 51 B.R. 560 (D.C.D.Utah 1985).

3.12 Other courts have also followed this line of reasoning. *See e.g. In re W.S. Sheppley & Co.,* 45 B.R. 473 (Bankr.N.D. Iowa 1984); *In re Greiman,* 45 B.R. 574 (Bankr.N.D.Iowa 1984); and *In re Faires,* 34 B.R. 549 (Bankr.W.D.Wash.1983).

3.13 However, the majority of the decisions involving interpretation of § 362(d)(2)(B) have followed what is often referred to as the "Feasibility" or "Rehabilitation Test." The leading case may be *In The Matter of Terra Mar Associates,* 3 B.R. 462, 466 (Bankr.D.Conn.1980), which held that § 362(d)(2)(B) required a showing "that there is a reasonable possibility of a successful reorganization within a reasonable time." It recognized that even in single asset real estate cases the property may be essential, but nonetheless ruled that "... indispensability of the property to the Debtor's survival and hope of rehabilitation is not enough ... to justify continuation of the stay when rehabilitation is hopeless." It further stated that the "reasonable possibility" standard does not include a hope "that somewhere, someone will fund an arrangement or refinance the mortgage with the plaintiffs. This is entirely too slim a reed from which this Court should exercise its discretion and keep the plaintiff at bay while the debtor continues to pray." *Id.* at 466.

3.14 As already noted, the standard enunciated by the *Terra Mar* decision is the majority position adopted by numerous other courts, although each court has varied in phrasing the standard. *See e.g. In re Mikole Developers, Inc.,* 14 B.R. 524 (Bankr.E.D.Pa.1981), "... Debtor's high hopes for reorganization or need alone for the property is not the sine qua non under § 362(d)(2)(B)"; *In re Dublin Properties,* 12 B.R. 77 (Bankr.E.D.Pa.1981) ("... more than a mere financial pipe dream!"); *In re Kors, Inc.,* 11 B.R. 324 (Bankr.D.Vt.1981) (property not necessary "if all the Debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that a reorganization in the near future is likely"); *In The Matter of Hollie,* 42 B.R. 111 (Bankr.M.D.Ga. 1984) ("Effective reorganization implies that there must be a reasonable chance for a Debtor to reorganize. If it is clear that there is no reasonable chance of reorganization, the automatic stay should be lifted"); and *In re Jug End in the Berkshires, Inc.,* 46 B.R. 892, 902 (Bankr.D. Mass.1985) ("to meet this burden, the Debtor must do more than merely assert that the property is necessary to an effective reorganization. If all the Debtor can offer at this time is high hopes ... it cannot be said that the property is necessary for 'an effective' reorganization ... and that the Debtor must show 'not only that the property is necessary to an effective reorganization, but that an effective reorganization is possible and the property will contribute to it.' "); also, *In re Shriver,* supra, at 187, agreeing that the requirement that the property "be necessary to an effective reorganization" requires a finding by the Court

that "there is a reasonable possibility of a successful reorganization within a reasonable time," citing *In re Terra Mar Associates*, supra, also that there should be a showing that the property has a "part to play," citing, *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, supra at 291, "or that it is essential," citing *In re Mikole Developers*, supra at 526, "in the reorganization effort." *See also In re Engle*, 51 B.R. 190 (Bankr.E.D.Pa.1985); *In The Matter of Discount Wallpaper Center, Inc.*, 19 B.R. 221 (Bankr.M.D.Fla.1982); *In re Executive Air Center, Inc.*, 60 B.R. 652 (Bankr.W.D.La.1986); *In re Bellina's Restaurants II, Inc.*, 52 B.R. 509 (Bankr.S.D. Fla.1985); *In re Boca Development Associates*, 21 B.R. 624 (Bankr.S.D.N.Y.1982); and *In re Ahlers*, 794 F.2d 388 (8th Cir. 1986).

3.15 This Court does concur with decisions holding that reorganization embraces both rehabilitation and liquidation efforts and that under § 362(d)(2)(B), property may be necessary either to an "effective rehabilitation" or to an "effective liquidation." However, the key word in analyzing subsection § 362(d)(2)(B) is "effective." Effective has been defined by Webster's New World Dictionary of the American Language, Second College Edition (1972 edition) as "having an effect; producing a result; producing a definite or desired result; in effect; actual, not merely potential or theoretical." The narrower "Necessity Test" impedes a court's ability to examine the probable relationship between the collateral and the success of the Debtor's reorganization efforts. *In re Jug End in the Berkshires, Inc.*, supra; *In re Island Helicopter Corporation*, 63 B.R. 809, 815 (Bankr.E.D.N.Y.1986).

3.16 For this reason, this Court finds itself inclined to follow the majority view and the "Feasibility Standard." Therefore, the Debtor, to meet its burden of proof to show that the property is necessary for an effective reorganization, must show the existence of a reasonable possibility that a successful rehabilitation or a successful liquidation can be accomplished within a reasonable period of time and that the property in question will contribute to this effect.

3.17 The Debtor need not show that it has actually proposed a plan which is acceptable to its creditors. *In re Saypol*, 31 B.R. 796 (Bankr.S.D.N.Y.1983). The automatic stay will remain operative however only if the Debtor can demonstrate that its prospects of an effective reorganization are well founded and that the integral role in the reorganization that it is assigned to the collateral has a justifiable basis. *Id.* at 802–04.

3.18 A reasonable probability cannot be grounded solely on speculation however, and the Debtor cannot meet its burden of proof through conjecture and speculation. *In re Dublin Properties*, supra at 81; *In re Island Helicopter Corp.*, supra at 815; *In re Craghead*, 57 B.R. 366, 370 (W.D.Mo. 1985).

3.19 This Court has been inundated with testimony from the Debtor that the property in question is essential to a full realization of its value through sale or development, along with the remaining property in the St. Tropez P.U.D. The Debtor has offered testimony of its President and Chief Executive Officer, Mr. Tomblin, that efforts have been made to obtain financing or additional capital to finish the development and therefore realize either a "small profit" or at least sufficient funds to substantially diminish the prospects of a large deficiency. There has, however, been no evidence that lenders or financial institutions were in any way receptive to undertaking this role for the Debtor. Also, much of the remaining property in the St. Tropez P.U.D. is not owned by the Debtor. The evidence showed that it is owned by the St. Tropez Joint Venture and at the time of this hearing the Debtor did not have control of that partnership or its property. Further, none of the threshold questions which are always before the Court when issues of the likelihood of an effective reorganization are presented were answered. For example, the Court was left

to speculate as to exactly how much more the property would bring if the Debtor was to market or develop it. The conclusory statements by the Debtor were not supported by any testimony. The Court was left to speculate when this bounty would be produced. The Debtor also put on no evidence to provide the Court with even a skimpy outline of a possible plan of reorganization. The Debtor conceded it had no effort of any kind under way to market the property, presented not even a single pro forma, no marketing plan, study or analysis, no income or profit projection, no quantitative financial forecast of any kind and as previously stated, no appraisal. Evidence was presented to the Court to the effect that the "developer can do it better" and such evidence is accepted by this Court. However, such statements do not represent the quality or quantity of evidence necessary for a Debtor to meet its burden of proof under § 362 and would appear to amount to little more than the "financial pipe dream" as contemplated by the Court in the *In re Dublin Properties* case cited herein.

3.20 This Court is aware that some courts, in the early stages of a bankruptcy case, consider a balance between the interests of the secured creditor against the Congressional policy favoring reorganization. A court should be hesitant to find no reasonable possibility of reorganization, especially where the Debtor has not had sufficient time to formulate a plan. *See e.g. In The Matter of Hollie*, supra at 118. In this case the defaults at issue were committed approximately eight months prior to the hearing and the Chapter 11 itself was filed almost seven months prior to the hearing. This Court feels that the Debtor had ample time to at least present evidence of how the Debtor was going to utilize provisions of the Code, in light of the relevant facts, to effectuate a plan of rehabilitation or liquidation. No such evidence was presented other than the vague references already mentioned.

▪ 3.21 Debtor also urges this Court to consider the state court litigation pending against the Movant and its subsidiary, the Service Corporation, relating to issues of, among other things, failure to honor prepetition commitments to finance the St. Tropez P.U.D. This Court first observes that all of these claims were raised before it and concurs with the statement in *In re Born*, 10 B.R. 43 (Bankr.S.D.Tx.1981) at p. 49 that "it seems clear that the Congressional intent was that complex counterclaims should be severed from complaints seeking to modify the stay under § 362" (citation omitted).

3.22 Under the circumstances of this case, it was clear that the Debtor's allegations that the Movant's claims should somehow be subordinated to the claims of unsecured creditors in order to avoid what the Official Unsecured Creditors Committee alleged to be a potential violation of the "absolute priority rule," would necessitate the filing of an adversary proceeding under Part VII of the Bankruptcy Rules. This was not done. Further, this Court notes that for the two days of testimony which was put before it that the causes of action asserted by Debtors could not summarily be dealt with in a context of a motion for relief from a stay. Again, agreeing with the Court decision of *In re Born*, this Court finds that it does no violence to the concept of the Bankruptcy Code to require the Debtor to meet its burden of proof under § 362(d) until the complex issues raised by it are finally laid to rest. *Id.*, p. 46–47. Therefore, the Debtor will not be permitted to undermine the expedited treatment of this Motion by interposing the state court issues. *See In The Matter of Little Creek Development Co.*, 779 F.2d 1068, 1074 (5th Cir.1986).

3.23 The Debtor in this case has also at least alluded to the idea that the Movant cannot do more with the subject properties than is now being done or attempted to be done by the Debtor. This Court is not aware of any requirement that the creditor explain what it intends to do with the property if it is successful in vacating the stay. The mere fact that a secured creditor would do nothing more than Debtor with the property does not mean Debtor should be allowed to keep the property. *In re Greiman*, 45 B.R. 574, 583 (Bankr.N.D.

Iowa 1984), citing *In re BBT,* 11 B.R. 224, 230 (Bankr.Nev.1981).

3.24 At the outset of this opinion it was noted that the remedies asserted by Movant under § 362(d)(1) and 362(d)(2) were in the disjunctive and that Movant need establish only one of the grounds to be entitled to relief. *See La Jolla Mortgage Fund v. Rancho El Cajon Associates,* supra; and *First Connecticut Small Business Investment Co. v. Ruark (In re Ruark),* 7 B.R. 46 (Bankr.D.Conn.1980). The parties focused their primary attention on the second grounds found in § 362(d)(2) during the two days of hearing and because of the Court's findings noted above, the Court finds it unnecessary to thoroughly examine the grounds for relief under § 362(d)(1) and limits its Order to the findings noted above.

3.25 The Court does find that it has jurisdiction over this matter as a core proceeding pursuant to 11 U.S.C. § 1334 and 28 U.S.C. § 157.

3.26 Finding that the Debtor has failed in its burden of proof under § 362(d)(2)(B) and that the Movant has met its burden of proof under § 362(d)(2)(A) and § 362(g), the Motion for Relief will be granted and an Order consistent with its Memorandum Opinion will be entered on date herewith.