**In the Matter of SPRING GARDEN FOLIAGE, INC., Debtor.**

**CENTRAL FLORIDA PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**SPRING GARDEN FOLIAGE, INC., Defendant.**

**Bankruptcy No. 80–733–Orl–Bk–AP.**

United States Bankruptcy Court, M. D. Florida, Orlando Division.

Oct. 29, 1981.

Jules S. Cohen, Orlando, Fla., for plaintiff.

Jeffrey R. Jontz, Orlando, Fla., for debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a relief chapter proceeding and the matter under consideration is a complaint, filed by Central Florida Production Credit Association (CFPCA), who seeks relief from the automatic stay imposed by § 362(a) of the Code. The relief is sought pursuant to § 362(d)(1) and (2) and is based on the contention that CFPCA lacks adequate protection and that the Defendant/Debtor, Spring Garden Foliage, Inc. (the Debtor), lacks equity in the subject property and the property is not needed for effective reorganization.

The evidence presented at the final evidentiary hearing which was combined with the preliminary hearing, as permitted by § 362(d) of the Code, reveals the following facts relevant and germane to the resolution of this controversy:

On or about November 20, 1977, Miny Farms, Inc. applied for, and obtained a loan from CFPCA. In connection with this loan transaction, Miny Farms, Inc. executed two promissory notes. The first in the amount of $370,655 and the second in the principal sum of $10,000, executed on December 5, 1977. In addition, Miny Farms, Inc. executed a mortgage encumbering certain properties owned by Miny Farms, Inc. located in Orange County and Sumter County, Florida, a security agreement, pledging as collateral certain fixtures and equipment located on the property known as the "Chicken Farm". In addition, Miny Farms, Inc. executed a financing statement and CFPCA duly perfected its security interest by recording the mortgage and by filing the financing statement.

On or about November 16, 1979, Miny Farms, Inc. conveyed to the Debtor, part of the real estate encumbered by the mortgage held by CFPCA. The conveyance included the inventory of plants and equipment secured by a security interest of CFPCA. The record reveals that the outstanding balance on these two notes is $253,587.17 plus $54,434.67 accrued interest up to, and including, September 2, 1981 and the interest accrues thereafter at the daily rate of $97.27. At the present time, the delinquency on the principal payments is $15,451.38 and on the interest payments of $54,434.57. The outstanding balance now due and owing to CFPCA is also secured by the following collateral:

(a) Approximately 21.5 acres of nursery property on West Kelly Park Road, Apopka, Florida, titled in the name of the Debtor.

(b) Approximately 20 acres of "Chicken Farm" property in Sumter County, Florida owned by K Farms, Inc.

(c) Approximately 60 acres of pasture land in Sumter County, Florida, owned by the Miny family.

(d) A house, together with five acres of land on West Kelly Park Road in Apopka, Florida, owned by the Miny family.

(e) An inventory of plants located on the nursery property on West Kelly Park Road in Apopka, Florida, titled to the Debtor.

(f) Central Florida Production Credit Association stock held by Miny and/or the Debtor.

The payment on the first note became due June 1, 1981 and the payment on the second note became due on December 1, 1981. Neither payments have been made.

The property comprised of 21.5 acres referred to as the nursery property is located on West Kelly Park Road in Apopka, Florida; it is worth at least $520,000. The value of the West ten acres of this 21.5 acre tract which contains two greenhouses has a fair market value of $98,000. The home of the Miny family located on West Kelly Park Road in Apopka, Florida, which is also encumbered by the mortgage held by CFPCA, has an approximate fair market value of $75,000. The home was purchased by the president of the Debtor in 1979, who paid $70,000 for the property and made extensive improvements to the property before deeding the same back to Mr. Miny. The 20 acres located in Sumter County, the "Chicken Farm", is owned by K Farms, Inc. and has a fair market value of at least $100,000. The 60 acres of pasture land located in Sumter County owned by the Miny family has a fair market value of $120,000. In addition to the collateral here before discussed, the indebtedness owed by the Debtor and due to CFPCA is also secured by stock of CFPCA owned by the Debtor which has a fair market value of between $20,000 and $25,000. The inventory of plants and the nursery facilities located on West Kelly Park Road have a fair market value of $52,000. Accordingly, the total value of the collateral held by CFPCA securing the principal balance of the loan of $253,587 is secured by properties valued at $884,500.

Even accepting the evidence presented by CFPCA, the value of the collateral is at least $520,000, not including the CFPCA stock. Therefore, the value of the collateral, no doubt, is far in excess of the amount due under the two notes.

The real estate encumbered by the mortgage held by CFPCA is also encumbered by a second mortgage held by the Miny family. At the hearing, the Debtor, K Farms, Inc., the owner of the "Chicken Farm" and the Miny family agreed that they are willing to permit CFPCA to foreclose or they are willing to deed, in lieu of foreclosure, the house located on West Kelly Park Road in Apopka, Florida; the West ten acres of the nursery property located on West Kelly Park Road in Apopka. They also stated that they are willing to surrender to CFPCA, a proportionate share of their stock which they hold in CFPCA. Under the previously stated valuation, these properties have an aggregate value of $293,000. It is without serious dispute that the remaining 10 or 11 acres of nursery property located on West Kelly Park Road in Apopka, is an integral part of the nursery operation and it is indispensable and essential to an effective reorganization of the Debtor. There is no question that the greenhouses and other buildings are needed to produce the plants, all of which form a vital and indispensable part of the business operation of the debtor.

As noted earlier, CFPCA seeks relief under § 362(d)(1) for "cause", especially for lack of adequate protection and under § 362(d)(2) on the dual grounds that the Debtor lacks equity in the subject property and the same is not needed for effective reorganization. By virtue of express provisions of the Code, the burden to establish lack of equity is placed on the entity who seeks relief from the automatic stay, § 362(g)(1) and the party opposing such relief has the burden of proof on all other issues, § 362(g)(2).

Considering the issues seriatim, it is clear that this record is devoid of any evidence which would warrant a finding that the collateral held by CFPCA is in jeopardy in

any sense. The equity cushion of the Debtor is very substantial and there is no evidence in this record which would warrant the conclusion that CFPCA is entitled to adequate protection within the meaning of § 361 because of a diminishment in value of its collateral due to continuing use of the properties in question by the Debtor. Thus, the relief sought cannot be granted for lack of adequate protection under § 362(d)(1).

This leaves for consideration the alternative grounds which are the alleged lack of equity and the claim that the subject property is not needed for an effective reorganization. CFPCA concedes, as it must, that if the Court considers only the indebtedness due to CFPCA, the Debtor has a very substantial equity in the subject properties. CFPCA contends, however, that in determining lack of equity, this Court must consider all outstanding encumbrances on the subject property and when this is done, the Debtor's equity is nonexistent or minimal. This proposition has no support by logic or by the legislative history of § 362 and therefore must be rejected.

■ The automatic stay imposed by § 362 of the Code protects the Debtor and the properties of the Debtor. If a party who seeks relief from the automatic stay occupies a position of a senior encumbrancer, it makes no difference how many junior encumbrances are outstanding against the subject property so long as the Debtor has a substantial and meaningful equity cushion over and above the senior encumbrances. Moreover, in this particular situation, the second mortgage held by the Miny family while it represents a valid, outstanding secured indebtedness, has no relevance because, as noted, the Miny family is willing to cooperate with the Debtor and willing to accept the moratorium on the principal payments on the mortgage until November, 1984, and they are willing to accept the proposed plan of reorganization.

In addition, in considering adequate protection, it is proper to consider the values of properties owned by entities other than the Debtor. In this instance the properties owned by the Miny family and K Farms,

Inc. This is especially true in the present instance because the owners of these properties state that they are willing to turn back a portion of these properties to CFPCA. Lastly, there is no doubt that the West 10 to 11 acres of nursery property located on West Kelly Park Road is indispensable to an effective reorganization.

■ In light of the foregoing, this Court is satisfied that the record established at the final evidentiary hearing would not justify granting relief to CFPCA based on either § 362(d)(1) or § 362(d)(2) of the Code.

A separate final judgment will be entered in accordance with the foregoing.