In re PALMER RIVER REALTY, INC., Sun Valley Country Club, Inc., Sun Valley Restaurant, Inc., Debtors.

Antonio ASQUINO, Joseph Asquino, Plaintiffs,

v.

PALMER RIVER REALTY, INC., Sun Valley Country Club, Inc., Sun Valley Restaurant, Inc., Defendants.

Bankruptcy Nos. 8200283, 8200284 and 8200998.
Adv. No. 820291.

United States Bankruptcy Court, D. Rhode Island.

Jan. 7, 1983.

Keven A. McKenna, Cheryl Asquino, McKenna, Greenwood & Feinstein, Providence, R.I., for plaintiffs.

Alden C. Harrington, Boyajian, Coleman & Harrington, Providence, R.I., for defendants.

DECISION DENYING PLAINTIFFS' COMPLAINT FOR RELIEF FROM STAY, AND DENYING PLAINTIFFS' MOTION TO DISMISS OR CONVERT CHAPTER 11 PETITION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Plaintiffs' Complaint for relief from the automatic stay against foreclosure of the Debtors' real estate, and on

the Plaintiffs' Motion to dismiss the Chapter 11 petition or to convert the case to one under Chapter 7.

The facts as determined from the hearing are as follows:[1] In 1955 the Plaintiffs, Antonio and Joseph Asquino, and a partner purchased real estate in Rehoboth and Seekonk, Massachusetts, and developed the Sun Valley Golf Course. The operations were conducted by three affiliated corporations: Sun Valley Country Club, Inc., operated the golf course; Sun Valley Restaurant, Inc., operated the restaurant, bar, and social activities; and Palmer River Realty, Inc., held title to the real estate, a total of approximately 238 acres.

In 1972 the Plaintiffs sold their stock in the corporations to John and Thomas Pellegrino and received a cash payment of $100,000 and a promissory note for $350,000. The note was secured by a mortgage covering all of the real estate except a 3.4 acre parcel which is rented to a trucking company, and a 24 acre parcel which includes approximately four holes of the 18-hole golf course.[2] In 1975 the Pellegrinos purchased the shares of their partner, Albert Prisco, for $50,000 cash and a promissory note for $175,000 which was secured by a second mortgage on the same property secured by the Asquinos' mortgage.

On March 12, 1982, Palmer River Realty, Inc., and Sun Valley Country Club, Inc., filed Chapter 11 petitions, and a Chapter 11 petition for Sun Valley Restaurant, Inc., was filed on November 29, 1982.

The Plaintiffs' main arguments in favor of conversion, dismissal, or relief from the stay, are that the Debtors in Possession have no equity in the mortgaged property; that the Asquinos' interest is not adequately protected; and that as of the day of the hearing, six months after the Chapter 11 filing, no plan of reorganization had been filed. The Plaintiffs therefore conclude that the Court should either grant relief from the automatic stay (pursuant to 11 U.S.C. § 362(d)) to allow them to foreclose on the mortgaged property, or dismiss or convert these cases to Chapter 7. The Debtors in Possession respond that there is plenty of equity in the mortgaged property, and that the Plaintiffs' interest is therefore adequately protected. Also, admittedly after a series of delays, a plan was filed on December 22, 1982.

Section 362(d)[3] provides for two alternative bases on which a creditor may seek relief from the automatic stay: (1) for cause, which includes lack of adequate protection; or (2) when the debtor lacks equity in the property, and the property is not necessary to an effective reorganization. Since the debtor's equity is often used to determine whether adequate protection exists,[4] we turn first to the question of equity in the mortgaged property.

Under § 362(g) the Plaintiffs have the burden of proof on the issue of equity or the absence thereof in the subject property, and the Debtors have the burden of proof

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**2.** It appears that the omission of the latter parcel from the mortgaged premises was unintentional, and this error was discovered during the trial of this matter.

**3.** 11 U.S.C. § 362(d) provides as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

**4.** *E.g., In re Boca Dev. Assocs.,* 21 B.R. 624, 630 (Bkrtcy.S.D.N.Y.1982); *Ukranian Sav. & Loan Ass'n v. Trident Corp. (In re Trident Corp.),* 19 B.R. 956, 958 (Bkrtcy.E.D.Pa.1982); *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.,* 18 B.R. 283, 287 (Bkrtcy.S.D.Cal.1982); *Whitinsville Sav. Bank v. Grundstrom (In re Grundstrom),* 14 B.R. 791, 793 (Bkrtcy.D.Mass.1981).

on all other issues.[5] The Plaintiffs presented opinion evidence that the market value of the entire 238 acres owned by the Debtors (which includes two unencumbered parcels—3.4 acres now leased to a trucking company, and 24 acres [approximately 4 holes] of the golf course) is between $500,000 and $540,000 at its highest and best use as an 18-hole golf course. That portion of the property subject to the Plaintiffs' mortgage has a substantially lower value of approximately $345,000, primarily because the exclusion of three or four holes from the 18-hole golf course effectively transforms the site into a nine-hole course. *See also* Joint Exhibit R, a letter of appraisal from the Plaintiffs' real estate expert, which also places the value of the mortgaged property at $345,000.

In determining whether a debtor has an equity cushion in property, bankruptcy courts have used two distinctly different approaches. What appears to be the majority view is summarized as follows: "In determining whether an 'equity cushion' exists in the subject property, all encumbrances are totalled, whether or not all the lienholders have joined in the request for relief from the stay." *North East Federal Savings and Loan Ass'n v. Mikole Developers, Inc. (In re Mikole Developers, Inc.)*, 14 B.R. 524, 525 (Bkrtcy.E.D.Pa.1981). Two recent decisions, however, have departed from this view. In *Central Florida Production Credit Ass'n v. Spring Garden Foliage, Inc. (In re Spring Garden Foliage, Inc.)*, 15 B.R. 140 (Bkrtcy.M.D.Fla.1981), the court noted that the proposition that all outstanding encumbrances must be considered in determining lack of equity "has no support by logic or by the legislative history of § 362." *Id.* at 143. The court concluded that if the party seeking relief was a senior encumbrancer, "it makes no difference how many junior encumbrances are outstanding against the subject property so long as the Debtor has a substantial and meaningful

equity cushion over and above the senior encumbrances." *Id.* Accord, *Wolford v. Wolford Enterprises, Inc. (In re Wolford Enterprises, Inc.)*, 11 B.R. 571 (Bkrtcy.S.D.W.Va.1981).

In the case at bar, the Plaintiffs are the senior encumbrancers. The second mortgagee, the former partner of the Debtors, opposes foreclosure and has expressed a willingness to cooperate with the Debtors in their reorganization efforts. In this respect the case is strikingly similar to *In re Spring Garden Foliage, Inc., supra,* where the court found that the second mortgage had "no relevance" to the question of equity because the holder of the second mortgage was willing to assist the debtor in a plan of reorganization. 15 B.R. at 143. Based on the facts presently before the Court, including the second mortgagee's express desire to support this reorganization attempt, we conclude that the second mortgage should not be considered in determining whether there is an equity cushion in the subject property.

At the time of filing the Chapter 11 petition, the Asquinos were scheduled as secured creditors in the amount of $252,027.16. Six payments were made between the March 12, 1982 filing date, and October 8, 1982, reducing the principal to $244,450.05. Plaintiffs' Post-Hearing Reply Memorandum at 32. Based on the record, the taxes due on the mortgaged property cannot be calculated with anything approaching certainty. The Plaintiffs first argue that the Debtors owe $39,615 in real estate taxes on the mortgaged property and then concede that this figure is based on 166 acres of property in Rehoboth, 24 acres of which are excluded from the mortgage. *Id.* Assuming *arguendo* that the Plaintiffs' figures are correct for the mortgage balance and taxes owed, and using the Plaintiffs' estimate of $34,000 for priority and administration expenses, interest, attorneys'

---

5. 11 U.S.C. § 362(g) provides as follows:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
(2) the party opposing such relief has the burden of proof on all other issues.

fees, and costs, the total debt is approximately $318,065. This is $27,000 less than the value of $345,000 which the Plaintiffs' own real estate expert placed on the subject property. Viewing this evidence most favorably to the plaintiffs, there is at least a modest equity cushion, and testimony regarding recent improvements to the golf course and clubhouse tends to corroborate the Debtors' contention that the property is not declining in value.

Based on the finding that there is equity in the property, there is no need for a protracted analysis of whether the property is "necessary to an effective reorganization." § 362(d)(2)(B). As in *In re Spring Garden Foliage, Inc., supra,* the subject property, which covers approximately 14 holes of the golf course, is clearly "a vital and indispensable part of the business operation of the debtor." 15 B.R. at 142.

There is authority, however, to the effect that the mere fact that the property is essential to the survival of the debtor's business is not sufficient to meet the burden of proof of § 362(d)(2)(B). In addition, the debtor must demonstrate that there is "a reasonable prospect for a successful reorganization of the going concern." *North East Federal Savings and Loan Ass'n v. Mikole Developers, Inc. (In re Mikole Developers, Inc.),* 14 B.R. 524, 526 (Bkrtcy.E.D. Pa.1981). *Accord, La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 291 (Bkrtcy.S.D.Cal.1982); *Provident Bank v. BBT (In re BBT),* 11 B.R. 224, 231, 235 (Bkrtcy.D.Nev.1981). This is a hotly contested issue in this case, and at the time of the hearing the Debtors had not yet filed a plan. The court in *In re BBT,* noting that the debtor was "not totally and wholly without possibility of reorganization," found it reasonable to allow one year for the debtor to file a plan. *Id.* at 237. Based on the entire record, this Court finds that the Debtors are not without hope of reorganization, and that the delay in filing a plan

is not tantamount to failure to meet the burden of proof pursuant to § 362(d)(2)(B).

Although the Court finds that relief from the stay cannot be granted under § 362(d)(2), which requires both that the Debtors lack equity in the property and that the property is not necessary for an effective reorganization, there is an alternative basis on which the Plaintiffs seek relief. Section 362(d)(1) provides that relief from the automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property...."[6] The "adequate protection" afforded creditors is protection against a decline in the value of their collateral as of the date of filing the petition. *La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 287 (Bkrtcy.S.D.Cal.1982); *Provident Bank v. BBT (In re BBT),* 11 B.R. 224, 232 (Bkrtcy.D.Nev.1981). Thus the discovery that the Plaintiffs' mortgage covers less than the entire 18-hole golf course, while no doubt giving them less protection than they thought they possessed, is not a decline in "adequate protection" under §§ 361–362. Indeed, the unmortgaged portion of the golf course without question enhances the adequacy of the Plaintiffs' interest in the property, since a sale of the entire 18-hole golf course would bring a significantly higher price than would a sale of only that portion which is subject to the mortgage. Also, there is credible testimony regarding significant recent improvements in the maintenance of the golf course and clubhouse, providing further protection against a decline in the value of the Plaintiffs' interest in the property. The Debtors' resumption of mortgage payments to the Plaintiffs since filing the Chapter 11 petition has also improved the Plaintiffs' position over what it was prior to the filing.

Finally, several courts have found adequate protection where there is an equity cushion.[7] Although the equity cushion here is modest, in conjunction with the factors

---

6. The two remedies in § 362(d) are "phrased disjunctively," and the Plaintiffs "need only prevail on one of these alternatives to obtain relief." *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.,* 18 B.R. 283, 286 (Bkrtcy.S.D. Cal.1982).

7. *See* note 4 *supra.*

discussed above, the Court finds that the Debtors have met the burden of showing that the Plaintiffs are adequately protected pursuant to § 362(d)(1), at least for the present time.

Accordingly, the Plaintiffs' complaint for relief from the automatic stay is denied without prejudice. Similarly, the Plaintiffs' motion to dismiss the Chapter 11 petition or convert it to a Chapter 7 proceeding is denied, also without prejudice to the right of any party to ask for appropriate future relief.