## In re 400 SOUTH MAIN STREET, Debtor.

**Bankruptcy No. 90–10667.**

United States Bankruptcy Court, D. Rhode Island.

June 10, 1991.

Jason D. Monzack, Kirshenbaum & Kirshenbaum, Cranston, R.I., for debtor.

Edward J. Bertozzi, Jr., Gayle P. Ehrlich, Edwards & Angell, Providence, R.I., for Old Stone Bank.

Louis A. Geremia, Quinn, Cuzzone & Geremia, Providence, R.I., trustee.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 16 and May 21, 1991 on the motion of Old Stone Bank (Old Stone) for relief from stay, and for leave to foreclose on the Debtor's real estate, pursuant to 11 U.S.C. § 362(d)(1) and (2) and on the Debtor's objection thereto. In light of the apparent lack of equity in the property, the Trustee has not actively opposed Old Stone's motion.

## FACTS

The debtor filed its Chapter 11 petition more than one year ago, on May 3, 1990, listing as the only secured claim, a debt to Old Stone in the principal amount of $675,-000. The total amount due the bank as of the initial hearing date, including interest and other costs collectible under the terms of the Note, less funds from a pledged certificate of deposit, is $787,988 (at the normal rate of interest under the Note), or $813,161.81 (under the default rate calculated at 5% over the prime rate from the default date of April 18, 1990). We find, and the Debtor does not dispute, that the default rate applies, and so we consider $813,161.81 to be the amount of the secured indebtedness.

The subject property consists of a 10,706 square foot parcel located on the corner of South Main and James Streets in the City of Providence, at the union of the primarily residential East Side and the Downtown area, which is improved by an historic 3,824 square foot, multi-use (law office and residential) structure, constructed in 1770 by Captain Joseph Tillinghast, from whom the building takes its name. Also located on the parcel are a two car garage with 360 square feet of finished studio living space above, and an asphalted 21–car parking lot. The property is a handsome Providence landmark.

At the preliminary hearing on April 16, Old Stone's appraiser testified that the value of the property had decreased from a May, 1990 estimate of $850,000, to a current value of $710,000.[1] The decrease is due primarily to the appraiser's shift in valuation method from the "cost" approach to an "income" approach, based on his perception of the negative impact of the declining real estate market in general, as well as the much-discussed "credit union crisis" in this state. The combined effect of these factors, in the appraiser's view, is a significantly tightened lending market. Of the surviving lenders in Rhode Island, those institutions have recently begun to rely heavily on the income approach to value. Moreover, current financial district vacancy rates in the City of Providence hover in the range of 20–30%.

Russell Gower, the Trustee's listing broker for the property, testified as to his marketing efforts, which for the most part have been focused locally. Confirming his assessment of the current real estate market as "the worst I've seen," Mr. Gower received just one offer in the amount of $400,000 in response to his $995,000 asking price, over the seven month period of his engagement. Nonetheless, we continued the hearing for one month to test Gower's observation of "a very recent flurry of activity in the residential real estate markets of the East Side and suburban Barrington," and its possible effect upon the value of the subject property. Contrary to counsel for Old Stone's recollection of the Court's intentions at the time we continued the April 16 hearing, it was not the Court's intention to automatically grant Old Stone's motion if the one month continuance produced no sales. Rather, we reserved judgement on the motion, and granted the Debtor's request for an opportunity to market the subject property for an additional period in order for the estate to take advantage of any improved market conditions, with the slight hope that a higher offer would materialize.

At the continued hearing, the Trustee represented that no new offers were received, and that only one interested party had even revisited the property for an additional view. The Debtor has requested that in the event Old Stone's motion is granted, then special out-of state advertising be conducted in order to advertise the "unique" property in a fashion best suited to its historic nature. At the conclusion of that hearing on May 21, we took the matter under advisement.

---

1. The appraiser included no value for a lighting fixture in the building which the general partners of the Debtor have at various times represented was an original Paul Revere chandelier worth approximately $30,000. Since there is no competent evidence as to the value or authenticity of the fixture, we assign no additional value to it nor do we adjust the appraiser's figures to account therefor.

## DISCUSSION

■ 11 U.S.C. § 362(d)(2) provides for relief from the automatic stay if the debtor does not have equity in the property, and if property is not necessary to an effective reorganization. The moving creditor has the burden of proof on the equity issue, while the debtor has the burden on all other issues. 11 U.S.C. § 362(g). *See In re Swansea Consol. Resources, Inc.*, 127 B.R. 1 (Bankr.D.R.I.1991). In this proceeding, Old Stone has established that the fair market value of the Tillinghast House is within a range of $706,000 to $812,000, depending on the valuation approach used. We agree that the income approach is the most reliable appraisal method for this particular type of property, especially in our current depressed real estate market. Accordingly we find, for the purpose of this proceeding, that the market value of the subject property is approximately $700,000. The Debtor does not refute this, nor does the property's seven-month market exposure belie this finding (except to suggest that the present true value may be even lower than as found). The Debtor clearly has no equity in the property.

■ The only prospect for a successful reorganization would necessarily involve the marketing and exposure of the property over a long time. Few can argue that an orderly sale would, in most instances, result in a greater benefit to the estate than a liquidation or auction sale. However, this Debtor cannot interminably delay its single secured creditor. The subject property has been listed with a broker since September, 1990 (initially for the Debtor, and then for the Chapter 11 Trustee), which listing has produced no serious offer over half the amount of Old Stone's lien, and there is no indication that the real estate market is about to improve.

The Debtor has not demonstrated that there is a reasonable possibility of a successful reorganization *within a reasonable time.* *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). *See In re Swansea*, 127 B.R. at 2. In this case, which has already begun its second year, it has not been shown that any reorganization, through an orderly sale or otherwise, is possible within a reasonable time.

## CONCLUSION

■ Accordingly, Old Stone's motion for relief from stay is GRANTED. As for the Debtor's request that out-of-state advertising be conducted by the bank in its marketing and/or auction procedure, the bank is expected to devise, in the exercise of its best business judgment, a reasonable method to give maximum exposure to the property, and to conduct a commercially reasonable sale, but without imposing any extraordinary advertising costs on the bank or the estate.

Enter Judgment consistent with this opinion.