**In re PELHAM STREET ASSOCIATES, Debtor.**

**Bankruptcy No. 89–11259.**

United States Bankruptcy Court, D. Rhode Island.

Aug. 29, 1991.

Robert D. Wieck, MacAdams & Wieck Inc., Providence, R.I., for Rhode Island Hosp. Trust Nat. Bank.

William J. McGair, McGair and McGair, Providence, R.I., for Ronald W. DelSesto.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 2, 3, and 4, 1991 on the motion of Rhode Island Hospital Trust National Bank (RIHT) for Relief From Stay and for leave to foreclose on the Debtor's property located in Newport, Rhode Island.

RIHT seeks relief pursuant to both 11 U.S.C. § 362(d)(1) (lack of adequate protection) and § 362(d)(2) (lack of equity in property, and property not necessary to an effective reorganization).

## FACTS

The Debtor's only asset is a renovated historic building on Pelham Street in Newport, containing office and storage space which is leased to a number of commercial tenants. The Debtor purchased the property in 1985 from Pelham Park Partnership (PPP)[1] for $750,000. As part of the transaction, PPP took back a note in the amount of $350,000 and retained a security interest which was subordinated to RIHT's first mortgage. As a defense to these relief from stay proceedings, the Debtor initially sought to challenge the validity of PPP's mortgage, but we have ruled that out as a part of this litigation. *See In re Pub Dennis Int'l, Inc.*, 115 B.R. 16, 17 (Bankr. D.R.I.1990); *In re Born*, 10 B.R. 43, 46 (Bankr.S.D.Tex.1981). The validity of that mortgage is the subject of a separate Adversary Proceeding (AP No. 90–1132).

The balance due on RIHT's first mortgage is $815,000, and the amount of PPP's second mortgage is $350,000. Since it is not mandatory that junior liens be considered in determining whether there is equity for § 362 purposes, we may treat the PPP lien as valid for the purpose of

Russell D. Raskin, Raskin & Berman, Providence, R.I., for debtor.

---

1. PPP is a Rhode Island general partnership whose general partners are Ronald W. DelSesto, Richard H. Baylis, and Vincent J. Buonanno.

this hearing. *See In re Palmer River Realty, Inc.*, 26 B.R. 138 (Bankr.D.R.I.1983). In addition, the junior lienholder in this case has joined the Debtor in opposing RIHT's motion for relief from stay.

The space under lease is summarized below:[2]

1. 1,113 square feet office space to The Providence Journal Co., through May 31, 1992, at $1,279.95 per month;

2. 235 square feet of office space to Barbara Lloyd and Kathy Giblin on a month to month basis at $285 per month;

3. Third floor office space to Alert Financial Services on month to month basis at $550 per month;

4. Office space to Aquidneck Textiles ending April 30, 1991 at $421.60 per month;

5. 1,300 square feet of office space to America 3 Syndicate, through October 31, 1991, at $1,000 per month;

6. Storage space to Henrietta, Inc., through December 31, 1991 at $100 per month;

7. Office space to Helme Associates, Ltd., through April 30, 1991, at $632.45 per month inclusive of storage space;

8. 193 square feet of basement space to R & S Store, Inc./Army–Navy Store at $145 per month;

9. Storage space to Coastal Diving & Salvage Co. at $255 per month;

10. 700 square feet of office space to Connections Travel at $790 per month;

11. Office space to Dr. James Kraeger, through October 31, 1991, at $675 per month;

12. 193 square feet of office space to Edmund O'Connell/Key 1 Computer, through March 31, 1991, at $310 per month with storage space at $67.90 per month;

13. Office space to Windigo Architects, through May 31, 1991 at $508.20 per month;

14. 2,658 square feet of office space to West Indies Management Company (WIMCO), through December 31, 1994, at $2,915.84 per month. Storage space through December 31, 1994 at $230 per month.

For April 1991, the total rental income was expected to be $9,358, with an additional $837 for the storage space. The actual income was: $9,181.65 for the month of April; $11,056.52 for May; and $10,-196.95 for June.

■ RIHT's appraisal indicates a market value of $800,000, while the Debtor's appraiser sets the value of the property at $958,000. We need not find a specific figure for purposes of § 362(d)(2)(A),[3] because of our ruling, *infra*, that the Debtor's property is necessary to an effective reorganization under § 362(d)(2)(B). The parties are advised, however, that in any future valuation proceedings herein, we will be placing considerable weight on the income approach to determine the market value of this property, as it is the most meaningful appraisal method available, we think, under the present stagnant market conditions. *See In re 400 South Main Street*, 128 B.R. 323, 325 (Bankr.D.R.I.1991).

## DISCUSSION

■ Under § 362(d)(2) the movant must first establish that the debtor has no equity in the property. The Debtor then has the burden to show that the property is necessary to an effective reorganization. § 362(d)(2)(B). The United States Supreme Court, in *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), set the standard for § 362(d)(2)(B) as a "reasonable possibility of reorganization within a reasonable period of time." *Id.* at 375–76, 108 S.Ct. at 632. Furthermore, *Timbers*[4]

---

**2.** Consumer Price Index (CPI) increases, and the lessees' share of expenses and taxes, where applicable, are omitted for the purpose of this summary.

**3.** Nevertheless, the valuation evidence already of record is retained for use in further proceedings in this case, if needed.

**4.** Although at least one court has treated the pertinent language in *Timbers* as merely dicta, *see In re Rassier*, 85 B.R. 524, 528–30 (Bankr.

does not require the Debtor to establish the probability of a successful reorganization, or that the plan, as proposed, is confirmable. *In re Ledgemere Land Corp.*, 125 B.R. 58, 64 (Bankr.D.Mass.1991). *See also In re Wasserman*, 122 B.R. 839 (Bankr. D.Mass.1991); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 712 (Bankr.W.D.Tex.1989). As we read the pertinent decisions, § 362(d)(2)(B) requires only that there be a reasonable possibility of confirmation, within a reasonable time.

 As of the date of the hearing, the Debtor had made substantial progress in the formulation of a plan [5] and had established, at least temporarily, grounds to defeat the instant motion for relief from stay. We find that such progress, mainly as demonstrated by an established occupancy rate and rental income, satisfies the *Timbers* standard. We have previously recognized that "adequate protection" under the Code is a flexible concept, to be tailored to the particular facts and circumstances of each case. *In re Tellier*, 125 B.R. 348, 349 (Bankr.D.R.I.1991); *In re Smithfield Estates, Inc.*, 48 B.R. 910, 914 (Bankr. D.R.I.1985). In this regard, the Debtor's high occupancy rate and firm lease commitments protect RIHT's secured position, so that deterioration of the status quo is unlikely. Additionally, it is clear that the property is necessary to the Debtor's reorganization under § 362(d)(2)(B).

On July 24, 1991, sua sponte, the Court reopened the hearing on the Motion for Relief from Stay to address recent criticism by the bank regarding the Debtor's compliance with requests for lease/tenant information. At the reopened hearing, the parties were mutually critical of one another, and the re-convening of the matter was unproductive and inconclusive. In any event, we declined the Debtor's request to submit updated lease information, and also took under advisement the Debtor's oral motion to stay the filing of a decision here-in until after hearing on its amended disclosure statement scheduled for September 12, 1991 at 10:00 A.M. Implicit in the filing of this decision, is our denial of that motion.

Accordingly, for the reasons discussed above, it is ORDERED that RIHT's Motion for Relief, both as to §§ 362(d)(1) and (d)(2), is DENIED, without prejudice.

Enter Judgment consistent with this opinion.

---

D.Minn.1988), we follow and adopt the reasoning of those courts which have interpreted *Timbers* literally and plainly. *See, e.g., In re Ledgemere Land Corp.*, 125 B.R. 58 (Bankr.D.Miss. 1991); *In re Wasserman*, 122 B.R. 839, 843 (Bankr.D.Mass.1991).

**5.** A disclosure statement and plan of reorganization had been filed, but then withdrawn by the Debtor on June 13, 1991, for modification.