### In re WHITE PLAINS DEVELOPMENT CORPORATION, et al., Debtors.

**Bankruptcy No. 91 B 21741.**

United States Bankruptcy Court, S.D. New York.

May 28, 1992.

See also 136 B.R. 93, 137 B.R. 139.

Hebb & Gitlin, Hartford, Conn., for Connecticut General.

Rogers & Wells, New York City, for debtors.

Hughes Hubbard & Reed, New York City, for Recoll Management as Attorney-in-fact for Federal Deposit Ins. Corp.

### DECISION ON MOTION FOR RELIEF FROM STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Connecticut General Life Insurance Company ("Connecticut General") has moved pursuant to 11 U.S.C. § 362(d)(2) for relief from the automatic stay with respect to certain fee and leasehold interests described collectively as the "Boston Project" which are owned by the Chapter 11 debtors. Connecticut General holds a perfected first mortgage lien against the Boston

Project. The Federal Deposit Insurance Corporation ("FDIC"), as successor to the interest of the Bank of New England, a second mortgagee, and the second largest creditor of the debtors, joins the debtors in opposition to Connecticut General's motion for relief from the automatic stay.

## FINDINGS OF FACT

1. On September 25, 1991, P & P Realty Company ("P & P"), Boston Harbor Industrial Development Corp. ("Boston Harbor") and Pappas Industrial Parks, Inc. ("PIP"), together with certain other affiliated entities, filed with the court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and were continued in the management and control of their respective businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. Pursuant to an order dated September 25, 1991, the Chapter 11 cases were administratively consolidated for procedural purposes only in accordance with Rule 1015(b) of the Bankruptcy Rules.

3. On the same day, Pappas Management Company, one of three general partners of E Street Associates, filed an involuntary petition in respect of E Street Associates pursuant to section 303 of the Bankruptcy Code and Rule 1004 of the Bankruptcy Rules. An order for relief under Chapter 11 of the Bankruptcy Code subsequently was entered with respect to E Street Associates. E Street Associates has continued in the management and control of its respective business and property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. Pursuant to an order dated February 13, 1992, the E Street case and the affiliated cases were administratively consolidated for procedural purposes only pursuant to Rule 1015(b).

5. PIP, P & P, Boston Harbor and E Street separately own certain interests in property located in Boston, Massachusetts, referred to as the "Boston Project." Their properties are described as follows:

(a) PIP owns, in fee, certain real property, together with the buildings and improvements thereon, known as 425 and 435 Summer Street and consisting of a seven-story office building and a parking garage (the "Office Property");

(b) P & P owns, in fee, certain real property, together with the buildings and improvements thereon, known as 410, 420 and 460–540 E Street and consisting of industrial warehouses (the "E Street Property");

(c) Boston Harbor owns a leasehold interest in certain real property known as 643, 645, 647, 647A, 647B, 649, 651 and 653 Summer Street and 300 West First Street and owns the buildings and improvements thereon consisting of industrial warehouses (the "Industrial Leasehold"); and

(d) E Street Associates owns a subleasehold (the "E Street Subleasehold") interest in a part of the Industrial Leasehold.

6. Connecticut General is the largest creditor and party in interest in the Chapter 11 cases. It holds a perfected first mortgage lien against the Boston Project.

7. As of the date of the hearing, the debtors were indebted to connecticut General in the aggregate principal amount of $46,099,790.50, not including accrued and unpaid interest, claimed late charges and various costs and expenses.

8. The aggregate market value of the Boston Project is $44,300,000.00. The Boston Project is encumbered by liens, inclusive of the liens securing the Connecticut General indebtedness, in the aggregate amount in excess of $63,943,470.00. Thus, the debtors have no equity in the Boston Project.

9. By order of this court dated February 14, 1992, the debtors were restricted in the use of cash collateral. Cash collateral may be used to maintain the property in question, including related expenses, but the excess must be turned over to Connecticut General.

10. There has been no decline or impairment in the value of the property in question. The value of the leasehold interests in question is amortizing over time as the term of the underlying ground leases run. The remaining term on the underlying ground leases is approximately twenty-two years.

11. The debtors' principal, James A. Pappas, testified that the debtors are using the cash collateral from rental income for repairs and maintenance and capital improvement with Connecticut General's consent. He said that all real estate taxes due in the post-petition period have been paid on a current basis and that all taxes due and owing as of the commencement of the case have been paid on consent and in accordance with court authorization. Additionally, all property insurance is in place.

12. Pappas testified that the debtors' actual results from operations for the period from February of 1992 until the present had exceeded the projections that had previously been furnished to Connecticut General. A new, long-term tenant executed a lease for space in one of the properties which would add approximately $400,000.00 as additional cash flow. Two other tenants, whose leases expired, agreed to stay on and will occupy additional space, which will bring in another $150,000.00 in cash flow.

13. At this juncture, Connecticut General is adequately protected because a portion of the assigned rents, as cash collateral, is being applied towards the maintenance of the property and related expenses. There is no deterioration of the property and the excess cash collateral will be turned over to Connecticut General.

14. The debtors have negotiated a plan of reorganization with input from their major creditor constituencies, except Connecticut General, which states that it will vote to reject the debtors' plan. Generally, the plan establishes separate classes for each secured creditor and creates a single class for unsecured claims, including each secured creditor's deficiency claim. A separate class is established for equity interests. Under the plan, the debtors propose to pay the secured creditors a market rate of interest on their secured claims. The debtors propose to cram down Connecticut General's claim pursuant to 11 U.S.C. § 506(a) to the extent of the present market value of the collateral securing such claim, with a payment over a period of twenty-two years.

15. The debtors propose to fund the plan with the cash flow from the properties because outside financing is not currently obtainable.

16. Connecticut General's expert financial witness testified that based on the debtors' current obligations, and without using a cram down valuation, the debtors' cash flow from the properties would be insufficient to meet the interest and principal payments and that by the year 1998 there would be a shortfall of $1.2 million. However, this evidence goes to confirmability, which is an issue to be addressed at the confirmation hearing.

17. The debtors have established that the properties in question are necessary to an effective reorganization within the meaning of 11 U.S.C. § 363(d)(2)(B) because the proposed plan provides a basis for determining whether the debtors can successfully reorganize under Chapter 11 of the Bankruptcy Code.

## DISCUSSION

■ In the instant case the debtor has satisfied its burden of proof under 11 U.S.C. § 362(g)(2) that Connecticut General is adequately protected in accordance with 11 U.S.C. § 362(d)(1). The properties are not deteriorating and the cash collateral under the rent assignment in the debtors' mortgage with Connecticut General is being applied, pursuant to court order, for the maintenance and expenses related to the properties. The excess cash collateral will be turned over to Connecticut General.

■ Accordingly, Connecticut General bottoms its motion for relief from the stay on 11 U.S.C. § 362(d)(2). The parties have stipulated that the debtors lack equity in the properties within the meaning of 11 U.S.C. § 362(d)(2)(A). Therefore, the debtor must show that the properties are necessary for an effective reorganization, as set forth in 11 U.S.C. § 362(d)(2)(B). In determining this issue, consideration must be given to the language of the United States Supreme Court that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.' " *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484

U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (citation omitted). In determining if there exists a "reasonable possibility" of reorganization, the debtor need not prove that the proposed plan is confirmable, that is, acceptable to its creditors. *In re East–West Associates*, 106 B.R. 767, 774 (S.D.N.Y.1989). The fact that a debtor lacks equity in the property in question is not fatal where the secured claimant is adequately protected, the debtor has made progress in formulating a plan and there is a reasonable possibility of confirmation within a reasonable time. *In re Pelham Street Associates*, 131 B.R. 260 (Bankr. D.R.I.1991). A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and not patently unconfirmable. *In re Ashgrove Apartments of De-Kalb County, Ltd.,* 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990).

■ A combination of lack of equity and a secured claimant's assertion that it would defeat a cram down attempt in a proposed plan by electing under 11 U.S.C. § 1111(b) to assert the full amount of its secured claim and relinquishing its deficiency claim, were insufficient to lift a stay under 11 U.S.C. § 362(d)(2) in *In re North Indianapolis Venture,* 113 B.R. 386 (Bankr.S.D. Ohio 1990). The court ruled that under these circumstances the debtor would be required to provide the secured claimant with a stream of payments, together with a discount rate, which would give the claimant the allowed amount of its claim. This conclusion is based on the axiom that payment later is worth less than payment now. However, the court did not lift the stay because it could not conclude that any plan proposed by the debtor would not pass muster at the confirmation hearing. *Id.* at 392. Thus, the debtor need only show for purposes of 11 U.S.C. § 362(d)(2)(B) that an effective reorganization plan is in prospect; that there is a reasonable likelihood of reorganization within a reasonable time. *In re Ritz–Carlton of D.C., Inc.,* 98 B.R. 170 (S.D.N.Y.1989).

The debtor has shown that there is a likelihood that all of its creditor classes, except Connecticut General, will accept the proposed plan and that it may succeed in applying the cram down approach with respect to the latter's claim. Hence, Connecticut General's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) will be denied.

CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. The debtors have established that Connecticut General is adequately protected with the meaning of 11 U.S.C. § 362(d)(1).

3. Although the parties have stipulated that there is a lack of equity, the debtors have sustained their burden of proving that the properties in question are necessary for an effective reorganization, as expressed in 11 U.S.C. § 362(d)(2)(B).

4. Connecticut General's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) is denied.

SETTLE ORDER on notice.